[Cite as *Williams v. Gray Guy Group, L.L.C.*, 2016-Ohio-8499.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

David & Sheila Williams,                    :

      Plaintiffs-Appellees,            :

v.                                                          :                    No. 16AP-321
                                             (C.P.C. No. 13CV-11823)

Gray Guy Group, L.L.C.,                     :

                                                   (REGULAR CALENDAR)
      Defendant-Appellant.           :

---

### D E C I S I O N

### Rendered on December 29, 2016

---

**On brief:** *Breen Law*, and *John E. Breen*, for appellees. **Argued:** *John E. Breen.*

**On brief:** *Freund, Freeze & Arnold, LPA, Douglas J. Schockman* and *Christine M. Duraney*, for appellant. **Argued:** *Christine M. Duraney.*

---

APPEAL from the Franklin County Court of Common Pleas

TYACK, J.

{¶ 1} Defendant-appellant, Gray Guy Group, L.L.C., appeals from the decision of the Franklin County Court of Common Pleas adopting the magistrate's decisions and overruling defendant's objections. For the following reasons, we affirm in part and reverse in part the decision and entry and remand the cause to the trial court.

## I. Facts and Case History

{¶ 2} Reading from the magistrate's December 16, 2014 decision, we can summarize the facts of the case. The parties entered into a contract on July 3, 2012 for Gray Guy Group to remodel the Williams' residence for the sum of $39,350.00 The remodeling work was an abject total failure and an inspection from the city of Columbus was required. The inspection found the Williams' home to be uninhabitable. The

involvement of the city resulted in Gray Guy Group's summary and unilateral withdrawal from the remodeling job. The Williams had already paid $60,700.70 to Gray Guy Group before its departure.

{¶ 3} The Williams were displaced from their home. They spent $3,771.82 to store their personal property. A new contractor was hired in an attempt to complete the original remodeling job and to render the house habitable at a cost of $75,721.14. To pay these additional costs, the Williams withdrew money from a retirement account which resulted in an IRS penalty assessment of $15,144.22.

{¶ 4} A lawsuit was filed by the Williams, and nearly one year later, a motion for default judgment was filed because Gray Guy Group had not filed an answer. A magistrate found that default judgment should be entered because proper service of summons had been made on Gray Guy Group and Gray Guy Group failed to properly answer or respond to the complaint. Further, the magistrate found liability against Gray Guy Group as a sanction imposed for its failure to appear at a properly noticed deposition of its proper officer. The magistrate indicated that the trial court should enter a judgment for the Williams on the issue of liability.

{¶ 5} The magistrate found that the Williams also incurred incidental damages of a recognizable nature by being forced to live with various relatives and foregoing family social visits and celebrations at their home for an extended period of time. The magistrate recommended an award $30,000 for these incidental damages.

{¶ 6} The magistrate found a violation of the Ohio Consumer Sales Practices Act ("CSPA"), based on the non-performance or unworkmanlike performance of the contract by Gray Guy Group and that the availability of the treble damage provision of R.C. 1345.09 was appropriate in this case. The magistrate found the total recoverable compensatory damages to be $556,013.64 and recommended an award of that amount. The magistrate later found that the Williams are entitled to an award of attorney fees, which were determined to be $4,689.00  On June 17, 2015, Gray Guy Group filed objections to magistrate's recommendations.

{¶ 7} On September 1, 2015, the trial court filed a decision and entry overruling Gray Guy Group's objections and adopting the magistrate's decision following the damages hearing and the magistrate's decision on attorney fees. On September 2, 2015,

Gray Guy Group filed a "Motion to File Transcript and For Reconsideration of September 1, 2015 Decision" to submit the transcript of the December 1, 2014 hearing before the magistrate arguing that its failure to file a transcript previously was inadvertent. Counsel asked for the trial court to reconsider its September 1 decision. (Sept. 2, 2015 Def.'s Mot. to File Tr. & for Recons.) On December 8, 2015, the trial court allowed the filing of the transcript of the December 1, 2014 magistrate hearing, but "upon review of said transcript, the Court is not inclined to reconsider its Decision." (Dec. 8, 2015 Decision & Entry.) The trial court adhered to its judgment as previously rendered and did not issue a new judgment.

{¶ 8} On March 29, 2016, the trial court denied a motion by Acuity, a Mutual Insurance Company, to intervene in the litigation, partially based on the timeliness of the request to intervene. Thereafter, the trial court entered a final appealable order on March 31, 2016 in favor of the Williams and against Gray Guy Group in the amount of $560,702.64. Gray Guy Group timely filed an appeal.

## II. Assignments of Error and Standard of Appellate Review

{¶ 9} Gray Guy Group brings two assignments of error for our consideration:

First Assignment of Error The trial court erred in adopting the magistrate's decision on default judgment and damages.

Second Assignment of Error The trial court erred in adopting the magistrate's decision on attorney's fees.

{¶ 10} In ruling on the objections to a magistrate's decision, the trial court "shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 11} An appeal from a trial court's judgment to adopt a magistrate's decision which the trial court rendered without the benefit of a complete transcript can be reviewed by the appellate court only to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion and the appellate court is precluded from considering the missing transcript submitted with the appellate record. *Amyx v. Penix-Kinsler*, 10th Dist. No. 14AP-1059, 2015-Ohio-3980, ¶ 8; *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730 (1995). "The term 'abuse of

discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 12} As noted earlier, Gray Guy Group failed to timely file a transcript for the trial court judge to consider, and the trial court made clear in its September 1, 2015 decision that it was confined to reviewing the legal conclusions contained in the magistrate's recommendations. However, following a motion, the trial court accepted the filing of the transcript but on review of said transcript, the trial court stated it was not inclined to reconsider its decision and denied the motion for reconsideration adhering to its previously rendered judgment. We find that based on the plain meaning of the trial court's words that the trial court did not render a decision with the benefit of a complete transcript. Therefore, we can only determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion. *Amyx* at ¶ 8.

### III. Personal Jurisdiction and Waiver of Service

{¶ 13} The first assignment of error argues that the trial court erred in adopting the magistrate's decision on default judgment and damages. Gray Guy Group presents different arguments addressing various asserted errors. First, it argues the default judgment is void because Gray Guy Group is non sui juris or because they were never properly served with a summons or complaint. Next, it asserts the Williams failed to present proof that they could recover treble damages under the CSPA and the damages calculation was excessive by including an improper award for consequential damages. Gray Guy Group also argues the damage calculation improperly trebled noneconomic damages and failed to cap noneconomic damages.

{¶ 14} In the first set of arguments, Gray Guy Group argues that it is not a legal entity and the judgment against it is void. Appellant argues Gray Guy Group ended its registration with the Ohio Secretary of State on October 28, 2010.

{¶ 15} "Pursuant to R.C. 1329.10(C), a plaintiff may commence or maintain an action against a party named only by its fictitious name." *Family Med. Found., Inc. v. Bright*, 96 Ohio St.3d 183, 2002-Ohio-4034, syllabus. A plaintiff may then enforce the resulting judgment against the user of that fictitious name. *Brown Bark II, L.P. v. Coakley*, 188 Ohio App.3d 179, 2010-Ohio-3023, ¶ 28 (10th Dist.). A sole proprietor

doing business under a fictitious name thus does not create an entity distinct from the person operating the business. *Id.* Rather, "[t]he individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations." *Patterson v. V & M Auto Body*, 63 Ohio St.3d 573, 575 (1992). Where, however, a court enters a judgment against a non-entity and the plaintiff knew the identity of the sole proprietor behind the fictitious name, the judgment rendered against that non-entity is void as the lawsuit "was never properly commenced." *Id.* at 577.

{¶ 16} In this case, appellant has presented itself as Gray Guy Group, L.L.C. and only now does it raise this issue that it is non sui juris. The Williams only knew appellant as Gray Guy Group, L.L.C., and that is who they named as a defendant in the lawsuit. We hold that the Williams may enforce the judgment against appellant as a user of the name Gray Guy Group LLC. "[A] defendant should not be allowed to profit by the confusion resulting from its having done business under a fictitious name." *Family Med. Found.* at ¶ 11. (Quotations omitted.)

{¶ 17} Gray Guy Group also argues that it was never properly served with the summons or complaint and, therefore, the trial court lacks personal jurisdiction. Appellant argues that there was no appearance made and service was never perfected. The trial court found that even if Gray Guy Group was not properly served, this defense was clearly waived.

{¶ 18} Appellate courts review a trial court's decision to exercise personal jurisdiction under a de novo standard. *State ex rel. Cordray v. Markedonoja Tabak 2000*, 189 Ohio App.3d 73, 2010-Ohio-2903, ¶ 18 (10th Dist.). Proper service of process is a prerequisite for personal jurisdiction. *Goering v. Lacher*, 1st Dist. No. C-110106, 2011-Ohio-5464, ¶ 9; *State ex rel. Benjamin v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-158, 2007-Ohio-2471, ¶ 4. "Service of the summons and complaint ' "is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served." ' " *During v. Quoico*, 10th Dist. No. 11AP-735, 2012-Ohio-2990, ¶ 25, quoting *Omni Capital Internatl. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45 (1946). In the absence of service of process or the waiver of service by the

defendant, a court ordinarily may not exercise power over a party the complaint names as a defendant. *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 350 (1999).

{¶ 19} Generally, a plaintiff's failure to perfect service of its original complaint is waived when the defendant appears " 'for any other purpose than to object to jurisdiction.' " *Wells Fargo Bank, N.A. v. Sekulovski*, 10th Dist. No. 11AP-795, 2012-Ohio-5973, ¶ 10, quoting *Slomovitz v. Slomovitz*, 8th Dist. No. 94499, 2010-Ohio-4361, ¶ 9. As a result, participation in a hearing without asserting the affirmative defense of failure of service of process waives the defense. *Wells Fargo* at ¶ 10, citing *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984)(personal jurisdiction may be obtained by service of process, voluntary appearance, or waiver).

{¶ 20} Civ.R. 4.2(G) allows for service of process upon a limited liability company by serving the agent authorized by appointment or by law to receive service of process; or by serving the limited liability company at any of its usual places of business by a method authorized under Civ.R. 4.1(A)(1). Civ.R. 4.1(A)(1)(a) provides:

> Evidenced by return receipt signed by any person, service of any process shall be by United States certified or express mail unless otherwise permitted by these rules. The clerk shall deliver a copy of the process and complaint or other document to be served to the United States Postal Service for mailing at the address set forth in the caption or at the address set forth in written instructions furnished to the clerk as certified or express mail return receipt requested, with instructions to the delivering postal employee to show to whom delivered, date of delivery, and address where delivered.

{¶ 21} If a plaintiff follows the Ohio Rules of Civil Procedure that governs service of process, a presumption of proper service arises. *Erin Capital Mgt. LLC v. Fournier*, 10th Dist. No. 11AP-483, 2012-Ohio-939, ¶ 18. A defendant can rebut the presumption of proper service with sufficient evidence that service was not accomplished. *Id.* at ¶ 19. Service of process fails if it does not comply with the requirements of due process. *Akron-Canton Regional Airport Auth. v. Swinehart*, 62 Ohio St.2d 403 (1980), syllabus. Due process requires service to be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 406, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Consequently, a defendant may rebut the presumption of

proper service by establishing that the plaintiff failed to direct service to an address where it would be "reasonably calculated" to reach a person or entity that may be served under Civ.R. 4.2. *Adams, Babner & Gitlitz, LLC v. Tartan Dev. Co. (West), LLC*, 10th Dist. No. 12AP-729, 2013-Ohio-1573, ¶ 10. *See Fournier* at ¶ 19.

{¶ 22} The record indicates that on October 27, 2013, when the complaint was filed, the complaint and exhibits were requested to be served by certified mail on Gray Guy Group, L.L.C., 52 Westerville Road, Westerville, Ohio 43081. (Oct. 27, 2013 Request for Service.) The complaint and exhibits were received on October 31, 2013 and signed for by Tiffany Ricart at 520 South State Street, Westerville, Ohio 43081. (Oct. 31, 2013 service complete.)

{¶ 23} Gray Guy Group admits that 520 South State Street is a UPS store where the United States Postal Service ("USPS") arranged for Gray Guy Group and other displaced tenants to receive mail. (June 17, 2015 Objs. to Mag.'s Recommendations at 3.) There is a presumption of proper service here as the Rules of Civil Procedure were followed. *Fournier* at ¶ 18. We find that it was a reasonable calculation for the Williams to direct service to a former place of business of Gray Guy Group as there is no indication that the Williams were aware that appellant had been displaced. Appellant has failed to rebut this presumption and has even admitted that mail service was set up by USPS to reach appellant if sent to 52 Westerville Road, Westerville, Ohio 43081. Civ.R. 4.1(A)(1)(a) states that any person may sign for the certified mail in this case mooting Gray Guy Group's assertion that Tiffany Ricart is not affiliated with Gray Guy Group. We find that service was perfected on appellant by way of certified mail in the fall of 2013.

{¶ 24} Appellant further admits in its objections to the magistrate's decision that Mr. Gray, the principal or agent of Gray Guy Group, met with the trial court judge on October 29, 2014 to discuss the case. (June 17, 2015 Objs. to Mag.'s Recommendations at 5.) The trial judge does not recall any mentioning of problems with service at that time, nor does Gray Guy Group assert that there was. (Sept. 1, 2015 Decision Adopting Mag.'s Decisions at 3.) The trial court also notes that there was no motion for leave to file an answer out of time which could have included an affirmative defense. *Id.*

{¶ 25} We find Gray Guy Group has waived any argument that service was not perfected and that service was, in fact, perfected. The trial court properly exercised personal jurisdiction over appellant.

## IV. Damage Calculations

{¶ 26} Gray Guy Group argues that the trial court erred in adopting the magistrate's damages calculation. Arguing that the Williams failed to prove they could recover treble damages; that the damages resulted in a windfall and improperly included consequential damages; and that noneconomic damages were not properly calculated.

{¶ 27} "The Consumer Sales Practices Act allows consumers to recover treble damages and attorney fees from sellers for deceptive or unconscionable acts." *Reagans v. Mountainhigh Coachworks, Inc.*, 117 Ohio St.3d 22, 2008-Ohio-271, ¶ 34; *see* R.C. 1345.09(B), (F)(2). Under the CSPA, treble damages are punitive in nature, intended to deter a seller's wrongful conduct. *See French v. Dwiggins*, 9 Ohio St.3d 32, 35-36 (1984) (characterizing treble damages as a penalty, in contrast to compensatory damages); *see also Whitaker v. M.T. Auto., Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 23.

{¶ 28} The correct measure of damages is the amount necessary to place the non-breaching party in the same position they would have been had the breaching party fully performed, the idea being to make the non-breaching party whole. *White Oak Communities v. Russell*, 10th Dist. No. 98AP-1563 (Nov. 9, 1999), citing *F. Ents., Inc. v. Kentucky Fried Chicken Corp.*, 47 Ohio St.2d 154 (1976). Consequential damages may also be awarded if they may reasonably " 'be supposed to have been contemplated by the parties as the probable result of such breach.' " *White Oak.,* quoting *Devereux v. Buckley & Co.*, 34 Ohio St. 16, 20 (1877), citing *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854).

## V. The Damage Award Did Provide a Windfall

{¶ 29} Gray Guy Group argues that the damages award results in a windfall for the Williams; that the Williams would recover the money paid for the remodeling and enjoy the benefit of the remodeled home. "Although a party damaged by the acts of another is entitled to be made whole, the injured party should not receive a windfall; in other words, the damages awarded should not place the injured party in a better position than that

party would have enjoyed had the wrongful conduct not occurred." *Triangle Props. v. Homewood Corp.*, 10th Dist. No. 12AP-933, 2013-Ohio-3926, ¶ 52.

{¶ 30} The original contract called for renovations to be completed for an estimated price of $39,350.00 The magistrate's December 16, 2014 decision suggests that the Williams were made whole with the awarding of the $60,700.70 which was paid to Gray Guy Group and the $75,721.14 which was paid to "new and competent contractors [that] had to be retained to both correct the work performed by defendant *and to actually execute the work as promised* by defendant." (Emphasis added.) (Dec. 16 2014 Mag.'s decision at 3.) The magistrate's factual findings in its decision do not state whether the originally desired remodeling to the home was ever completed, only that contractors had been paid to do so. *Id.* However, the magistrate's decision does provide evidence that Gray Guy Group caused considerable damage to the house that rendered the house uninhabitable. *Id.* Some examples of the unworkmanlike conduct included the electricity to the entire house failing to work, all of the drywall installed by Gray Guy Group had to be removed due to code dictates, all the valuable copper pipes being removed, and all concrete comprising the basement floor being removed leaving a floor made of "just mud." *Id.* All the work done by Gray Guy Group had to be corrected. *Id.*

{¶ 31} The magistrate's decision does not state whether the Williams are now enjoying the benefit of their remodeled home or that they are in a better position now than they would have been had the wrongful conduct not occurred. However, being precluded from considering the magistrate's hearing transcript, which the trial court did not have when it made its September 1, 2015 decision, we must conclude that the magistrate's factual findings indicate that the Williams now have a remodeled habitable home. *State ex rel. Duncan* at 730. We find that the trial court abused its discretion in the application of law to the factual conclusions of the magistrate in awarding damages for the $60,700.70 paid to Gray Guy Group and the $75,721.14 paid to another contractor to begin to repair the home. To make the Williams whole, they should have a habitable remodeled home and have paid the original contract amount of $39,350.00 The total amount paid to Gray Guy Group, $60,700.70, should not have been awarded as damages. The original contract amount of $39,350.00 should be removed from the damage award

before trebling. We find, based only on the trial court's and the magistrate's decision, that the Williams have received a windfall.

## VI. Consequential Damages are Appropriate and Foreseeable

{¶ 32} Gray Guy Group argues that the $15,144.22 penalty imposed by the IRS on the Williams is not a consequential damage. Consequential damages may also be awarded under the CSPA and are those damages that may reasonably " 'be supposed to have been contemplated by the parties as the probable result of such breach.' " *White Oak.*, quoting *Devereux* citing *Hadley*.

{¶ 33} " 'A contracting party is generally expected to take account of those risks that are foreseeable at the time he makes the contract. He is not, however, liable in the event of breach for loss that he did not at the time of contracting have reason to foresee as a probable result of such a breach. The mere circumstance that some loss was foreseeable, or even that some loss of the same general kind was foreseeable, will not suffice if the loss that actually occurred was not foreseeable. It is enough, however, that the loss was foreseeable as a probable, as distinguished from a necessary, result of his breach.' " *Trucco Constr. Co. v. City of Columbus*, 10th Dist. No. 05AP-1134, 2006-Ohio-6984, ¶ 16, quoting Restatement of the Law 2d, Contracts, Section 351, Comment a.

{¶ 34} If, for example, the "nature and price of the product the buyer purchases from the seller is such that, at the time of contracting, the seller has reason to know the buyer would borrow money to purchase the product, then the interest on the loan used to purchase the equipment may be recovered as a consequential damage of the breach." *Bobb Forest Prods. v. Morbark Indus.*, 151 Ohio App.3d 63, 2002-Ohio-5370, ¶ 68 (7th Dist.), citing *Architectural Identification, Inc. v. Am. Bus. Equip.*, 10th Dist. No. 85AP-1048 (Sept. 16, 1986).

{¶ 35} The question is whether the incurred IRS penalties were foreseeable probable results of Gray Guy Group's breach. Looking to the Restatement of the Law 2d, Contracts, we can find an analogous illustration:

> A, a plastic surgeon, makes a contract with B, a professional entertainer, to perform plastic surgery on her face in order to improve her appearance. The result of the surgery is, however, to disfigure her face and to require a second operation. In an action by B against A for breach of contract,

> the court may limit damages by allowing recovery only for loss incurred by B in reliance on the contract, including the fees paid by B and expenses for hospitalization, nursing care and medicine for both operations, together with any damages for the worsening of B's appearance if these can be proved with reasonable certainty, but not including any loss resulting from the failure to improve her appearance.

(Emphasis omitted.) Restatement of the Law 2d, Contracts, Section 351, Comment f, illustration 19.

{¶ 36} Here, Gray Guy Group caused considerable harm to the Williams' home, their principal place of residence. As a result of this breach, it was foreseeable that the Williams would spend what was necessary in an attempt to repair the damage and return home. The Williams incurred significant penalties from the IRS for withdrawing early on their retirement account and for the storage of the personal property at multiple storage facilities in pursuit of that endeavor. These are the costs the Williams paid in an attempt to repair the damage done and return their home to the state it was before the contract. This is analogous to the examples in *Bobb Forest Prods.* and Restatement of the Law 2d, Contracts. We find that the trial court's application of the law to the factual findings do not constitute an abuse of discretion in awarding consequential damages incurred by the Williams' reliance on the contract.

## VII. Appellees Were Improperly Awarded Noneconomic Damages

{¶ 37} Gray Guy Group argues that the trial court erred in adopting the magistrate's decision which awarded $30,000 "for incidental damages related to the extended inability to use their home for customary familial purposes," arguing that these are noneconomic damages that are capped at $5,000. (Dec. 16, 2014 Mag.'s decision at 4.) Gray Guy Group also avers that, as noneconomic damages, this amount is not subject to being trebled. This second argument is not well-taken as the Supreme Court of Ohio has held "that the actual damages proven, whether economic or noneconomic, are subject to trebling under R.C. 1345.09(B)." *Whitaker* at ¶ 22.

{¶ 38} The CSPA states, in relevant part: "As used in this section, 'actual economic damages' means damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345. of the Revised Code and does not include damages for noneconomic loss as defined in section 2315.18 of the Revised Code." R.C.

1345.09(G). " 'Noneconomic loss' means nonpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss." R.C. 2315.18(A)(4).

{¶ 39} We must determine whether the trial court's application of the law constituted an abuse of discretion in awarding $30,000 for noneconomic damages. The magistrate's reasoning for awarding these damages stated:

> In addition to the out of pocket damages suffered by plaintiffs, it is additionally the case they incurred incidental damages of a recognizable nature. Because of defendant's outrageous conduct, plaintiffs' were forced to endure notable discomfort and harm. They were forced to encounter significant hardship and live for over five months with Mrs. Williams' sister. Thereafter, they had to move in with their son, and thereafter they relocated to their daughter's house. Mrs. Williams became emotional when she recounted that plaintiffs could not have their customary family social visits, Christmas celebration, and family dinners together at the Williams' home.

(Dec. 16, 2014 Mag.'s decision at 3.)

{¶ 40} The December 16, 2014 decision indicates that the magistrate carefully considered the testimony of Mrs. Williams and the surrounding evidence in order to award damages of an incidental nature. The Williams spent considerable time and effort living outside of their home with their extended family. The Gray Guy Group's actions deprived the Williams the enjoyment and benefit of their home for an extended period of time, forced the storage of many of their personal possessions and deprived many of the Williams' family members of their customary family social functions. However, nothing from the magistrate's reasoning indicates that theses damages were pecuniary in nature and would be regarded as an intangible loss for pain and suffering.

{¶ 41} We find that the trial court did abuse its discretion in adopting the magistrate's recommendation of awarding $30,000 for "incidental damages related to the extended inability to use their home for customary familial purposes." (Dec. 16, 2014 Mag.'s decision at 4.) Such damages for noneconomic loss are not to exceed $5,000 but

such provable damages are subject to trebling under R.C. 1345.09(B). R.C. 1345.09(A); *Whitaker* at ¶ 22.

{¶ 42} Having found that Gray Guy Group was properly before the trial court and that the trial court's application of the law to its factual findings was in error only as to what constitutes noneconomic damages and as to whether the Williams received a windfall, the first assignment of error is sustained in part and overruled in part.

## VIII. Attorney Fees

{¶ 43} The second assignment of error argues that the awarding of attorney fees was in error as there was no violation of the CSPA.

{¶ 44} Where a court is empowered to award attorney fees by statue, the amount of attorney fees is within the sound discretion of the trial court. *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 146. An appellate court will not interfere unless the amount of fees determined is so high or so low as to shock the conscience. *Id.*; *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91 (12th Dist.1985). "The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court." *Brooks* at 91.

{¶ 45} The CSPA states, in pertinent part:

> For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:
>
> * * *
>
> (F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed and limited pursuant to section 1345.092 of the Revised Code, if either of the following apply:
> * * *
>
> (2) The supplier has knowingly committed an act or practice that violates this chapter.

R.C. 1345.09(F)(2). When awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably

expended on the case multiplied by an hourly fee, and then may modify that calculation by application of other factors. *Bittner* at 145.

> These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent.

*Id.* at 145-46. All these factors may not be applicable and the trial court has the discretion of which factor will and to what extent they will affect the initial calculation. *Id.* at 146. Further, we have found previously that there is "no prohibition against awarding attorney fees for services rendered prior to the filing of the complaint for a CSPA violation." *Luft v. Perry Cty. Lumber & Supply Co.*, 10th Dist. No. 02AP-559, 2003-Ohio-2305, ¶ 39.

{¶ 46} Gray Guy Group argues that there was no proof of a violation of the CSPA and therefore there has been no knowingly committed act or practice that violates R.C. Chapter 1345. The magistrate and the trial court found that there was no room for doubt that Gray Guy Group acted knowingly. We agree with the trial court's application of the law. Gray Guy Group knowingly violated the CSPA and the Williams are entitled to reasonable attorney fees.

{¶ 47} The second assignment of error is overruled.

## IX. Conclusion

{¶ 48} Having overruled the second assignment of error and sustained in part and overruled in part the first assignment of error, we affirm in part and reverse in part the decision of Franklin County Court of Common Pleas and the cause is remanded for implementation of this decision.

*Judgment affirmed in part, reversed in part and cause remanded.*

KLATT and HORTON, JJ., concur.