[Cite as *McLemore v. Clinton Cty. Sheiff's Office*, 2023-Ohio-1604.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

|   |   |   |
|---|---|---|
| FAITH McLEMORE, et al., | : | |
| Appellant, | : | CASE NO. CA2022-07-019 |
| | : | O P I N I O N |
| - vs - | | 5/15/2023 |
| | : | |
| CLINTON COUNTY SHERIFF'S OFFICE, | : | |
| et al., | | |
| | : | |
| Appellees. | | |

CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CVH20210332

Faith McLemore, pro se.

Rohrbachers Cron Manahan Trimble & Zimmerman Co., L.P.A., and J. Mark Trimble and Tracy B. Selis, for appellees, Ohio Crime Victim Justice Center, Morgan Keilhoz, Brianna Schultz, and Alexandra Fehder.

Isaac Wiles & Burkholder, LLC, and Jeffrey A. Stankunas, for appellees, Clinton County Sheriff's Office, Ralph Fizer Jr., Brian Prickett, Doug Eastes, Brett Prickett, Terence Meehan, Thomas Crouch, Robert Gates, Morgan Wages, Elliott Sylvester, the Clinton County Board of Commissioners, Kerry Steed, Brenda Woods, Mike McCarty, the Clinton County Prosecuting Attorney's Office, Andrew McCoy, John Kaspar, Stephen Payne, Gary Garrison, Marvin Corbin, and Arlene Soto.

Dinsmore & Shohl LLP, and Justin M. Burns and Gary E. Becker, for appellees, City of Wilmington, City of Wilmington Police Department, City of Wilmington Police Chief Ron Cravens, City of Wilmington Fire Department, City of Wilmington Prosecutor David Henry, City of Wilmington Law Director Brett Rudduck, City of Wilmington Mayor John Stanforth, City of Wilmington City Council Members (Jonathan McKay, Michael Snarr, Kristi Fickert, Matt Purkey, Kelsey Swindler, Bill Liermann, Nick Eveland, and Mark McKay), and City of Wilmington Fire Department/EMTs Brett Terrell and Mark Duncan.

**BYRNE, J.**

{¶1}  Faith McLemore appeals the decision of the Clinton County Court of Common Pleas striking her pleadings and dismissing her claims.  For the reasons described below, we affirm the decision of the trial court.

## I. Facts and Procedural Posture

## A. The Complaint

{¶2}  On or about November 25, 2019, Marvin "Andy" Napier, Jr. ("Andy") died while he was in the custody of the Clinton County Sheriff's Office.  Nearly two years later, on November 24, 2021, a complaint bringing claims concerning the circumstances of Andy's death was filed in the Clinton County Court of Common Pleas.  The complaint purported to be brought on behalf of four individual plaintiffs: (1) Faith McLemore, who is Andy's daughter; (2) Mary Napier, who is Andy's daughter and McLemore's sister; (3) Devin Napier, who is Andy's son and McLemore's brother; and (4) their deceased father, Andy.  The complaint purported to be brought by these Plaintiffs pro se—that is, with the Plaintiffs representing themselves, rather than being represented by a lawyer.[1]

{¶3}  The complaint asserted claims under 42 U.S.C. 1983, a federal statute providing that "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

---

1. There are serious questions about whether Mary Napier and Devin Napier were or are aware that they were named as plaintiffs in the lawsuit, and whether they appeared pro se in this lawsuit.  There are also serious questions about Andy's appearance as a plaintiff when Andy (1) was deceased at the time the complaint was filed, and (2) was named individually as a plaintiff, rather than his estate.  Because we find (as explained below) that the trial court's decision should be affirmed for reasons unrelated to these questions, we need not examine these questions further.  For purposes of readability, we will simply refer to the "Plaintiffs," rather than the "putative" Plaintiffs.

action at law* * *." In support of this claim, the complaint alleged that the defendants violated Andy's rights and covered up the true cause of his death.

{¶4} The complaint identified ten government entities, one non-profit organization, and 37 individuals associated with those entities as defendants. Specifically, the complaint identified the following defendants:

- The Clinton County Sheriff's Office, and the following individuals allegedly associated, either then or previously, with that office: (1) Sheriff Ralph D. Fizer Jr.; (2) Brian Prickett; (3) Brett Prickett; (4) Doug Eastes; (5) Morgan Wages; (6) Elliott Sylvester; (7) Terrence Meehan; (8) Thomas [Crouch]; and (9) Robert Gates;[2]

- The Clinton County Prosecuting Attorney's Office, and the following individuals associated with that office: (10) Prosecuting Attorney Andrew McCoy; (11) Assistant Prosecuting Attorney John [Kaspar]; and (12) Investigator Stephen Payne;

- The "Wilmington City Prosecutor," which appears to have been a reference to the City of Wilmington's Office of Law Director, and the following individuals then-associated with that office: (13) Law Director Brett Rudduck; and (14) Prosecutor David Henry;

- The "Wilmington Coroner's Office," which appears to have been a reference to the Clinton County Coroner's Office, and the following individuals associated with that office: (15) Gary Garrison; (16) Marvin Corbin; and (17) Arlene Soto;

- The City of Wilmington Police Department, and (18) Police Chief Ron Cravens;

- The City of Wilmington Fire Department, and the following individuals associated with that department: (19) Brett Terrell, and (20) Mark Duncan;

- The Montgomery County Coroner's Office/Miami Valley Crime Lab, and the following individuals associated with

---

2. The complaint misspells the last names of two defendants. We have corrected those misspellings where indicated with brackets. The complaint also named "all other investigators/officers who were on scene and or involved with [Andy's] death in custody case" as defendants.

that office: (21) Dr. Susan Brown; and (22) Dr. Kent Harshbarger;

- The Clinton County Board of Commissioners, and the following three county commissioners: (23) Kerry Steed; (24) Brenda Woods; and (25) Mike McCarty;

- The City of Wilmington's Mayor's Office, and (26) Mayor John Stanforth;

- The City of Wilmington's City Council, and city council members (27) Jonathan McKay; (28) Michael Snarr; (29) Kristi Fickert; (30) Matt Purkey; (31) Kelsey Swindler; (32) Bill Liermann; (33) Nick Eveland; and (34) Mark McKay;

- The Ohio Crime Victim Justice Center ("OCVJC"), a non-profit organization based in Powell, Ohio, and the following individuals associated with that organization: (35) Morgan Keilholz; (36) Brianna Schultz; and (37) Alex Fehder.

{¶5} The complaint was not signed by any of the Plaintiffs and did not list any of the Plaintiffs' addresses. A certificate of service appearing at the end of the complaint stated, "I hereby certify that a copy of the for[e]going has been sent via email to the following email addresses," followed by a list of 31 of the 37 individual defendants and email addresses for each of those 31 individuals. The certificate of service then stated that three of the individual defendants—David Henry, Brett Terrell, and Mark Duncan—were "[s]erved in person" at their places of employment. Though the certificate of service stated that "I" served the 31 individuals by email, it is not clear to whom "I" references. Likewise, it is not clear what person served Henry, Terrell, and Duncan in person. The certificate of service did not indicate that any effort whatsoever was made to serve three of the individual defendants: Terrence Meehan and Thomas Crouch with the Clinton County Sheriff's Office, and Dr. Susan Brown with the Montgomery County Coroner's Office. In place of a signature block, the complaint simply listed the names of the four Plaintiffs after the certificate of service—one of whom, Andy, was deceased, and so he could not have participated in

- 4 -

serving anyone. The names were typed, not signed, and were not preceded by the standard "/s/" designation for electronic signatures.

## B. The Amended Complaint

{¶6} On December 21, 2021, a 167-page amended complaint was filed, purportedly by the same four Plaintiffs identified in the initial complaint. The amended complaint named the same defendants as the initial complaint. As with the initial complaint, the certificate of service stated that the same 31 of 37 individual defendants who were served the original complaint by email had again been served with the amended complaint by email, and that Henry, Terrell, and Duncan were again served with the amended complaint by in-person service. The amended complaint was not signed, but concluded with the typed names of McLemore, Devin Napier, and Mary Napier (but not Andy). The certificate of service was also unsigned, and lacked even any typed names that might indicate who performed the attempts at service described in the certificate.

## C. The Motions to Dismiss and Motions to Strike

{¶7} The defendants associated with the City of Wilmington, i.e., those departments and offices, elected and appointed officials, and employees listed above (collectively "the Wilmington Defendants"), moved to dismiss the initial complaint. The Wilmington Defendants moved to dismiss pursuant to Civ.R. 12(B)(2) for lack of personal jurisdiction, pursuant to Civ.R. 12(B)(4) for insufficiency of process, pursuant to Civ.R. 12(B)(5) for insufficiency of service of process, and pursuant to Civ.R. 12(B)(6) for failure to state a claim upon which relief can be granted. Among other arguments, the Wilmington Defendants also argued that the complaint was not compliant with Civ.R. 10(A) because the Plaintiffs' addresses were not listed, that the complaint violated Civ.R. 10(B) because it did not state its allegations and claims in separately-numbered paragraphs, and that, because the Plaintiffs did not sign the complaint, the complaint violated Civ.R. 11. After the

filing of the amended complaint, the Wilmington Defendants filed a new motion to dismiss seeking dismissal of the amended complaint for the same reasons they had requested dismissal of the initial complaint, and for additional reasons, such as qualified immunity and lack of standing.

{¶8} Next, the defendants associated with Clinton County, i.e., those departments and offices, elected and appointed officials, and employees listed above, but not including the two employees of the Clinton County Coroner's Office who were named as defendants (collectively "the Clinton County Defendants"), moved to strike both the complaint and the amended complaint because those pleadings, in violation of the requirements of Civ.R. 11, were not signed by any of the Plaintiffs.

{¶9} McLemore then individually filed a memorandum opposing "the defendant's motion to dismiss," without specifically identifying the motion or motions she was opposing. Notably, the other Plaintiffs were not identified as joining McLemore's memorandum.

{¶10} Next, OCVJC and its employees named as defendants (collectively, "OCVJC Defendants") moved to dismiss all claims against them pursuant to Civ.R. 12(B)(2), 12(B)(5), and 12(B)(6), as well as Civ.R. 11 and Civ.R. 10(A). The OCVJC Defendants argued that all claims against them should be dismissed because the Plaintiffs failed to properly serve them with the summons and complaint, so the trial court lacked personal jurisdiction over them. They also argued the amended complaint violated the requirements of Civ.R. 10(A) and 11, and that the Plaintiffs failed to state a claim for which relief may be granted.

{¶11} Finally, the Clinton County Coroner's Office and its employees named as defendants ("Clinton County Coroner Defendants") moved to strike both the initial complaint and the amended complaint pursuant to Civ.R. 11. The Clinton County Coroner Defendants adopted, pursuant to Civ.R. 10(C), the same arguments the Clinton County Defendants

made in their motion to strike.

{¶12} Neither McLemore individually nor the Plaintiffs collectively ever filed any memoranda opposing the motions filed by the OCVJC Defendants and the Clinton County Coroners Defendants.

{¶13} The Montgomery County Coroner's Office and the individual defendants associated with that office ("Montgomery County Coroner Defendants") never filed any form of responsive pleading or motion, and in fact never appeared in the case.

**D. Hearing and Written Decision on Motions to Dismiss and Motions to Strike**

{¶14} On May 19, 2022, the trial court held a hearing on the various motions to dismiss and motions to strike. On June 6, 2022, the trial court issued a decision and judgment entry in which it addressed all the pending motions. The trial court granted the motions to dismiss filed by the Wilmington Defendants and the OCVJC Defendants, dismissing all pending claims against them based on the Plaintiffs' failure to serve them with a summons and the complaint. The court also dismissed all claims against the Montgomery County Coroner for the same reasons. The trial court also struck the complaint and the amended complaint with respect to *all* defendants because those pleadings, in violation of Civ.R. 11, were not signed by any of the Plaintiffs. Immediately after striking the complaint and amended complaint with regard to the Clinton County Defendants and the Clinton County Coroner Defendants on the basis of Civ.R. 11, the trial court stated that the Clinton County Defendants and the Clinton County Coroner Defendants had also argued—like the Wilmington Defendants and the OCVJC Defendants—that the Plaintiffs failed to serve them with a summons and the complaint. The trial court then stated, "If the complaint and/or amended complaint is subsequently reinstated," the trial court "hereby rules" that the complaint and/or amended complaint would be dismissed against the Clinton County Defendants and the Clinton County Coroner Defendants. However, we are unable to locate

- 7 -

anything in the record indicating that the Clinton County Defendants and the Clinton County Coroner Defendants argued the complaint or amended complaint should be dismissed for the plaintiffs' failure to serve them with a summons and the complaint.

{¶15} The trial court also addressed the Civ.R. 12(B)(6) arguments raised by the Wilmington Defendants and the OCVJC Defendants, the arguments regarding the complaint and amended complaint's alleged noncompliance with Civ.R. 10, arguments regarding the potential unauthorized practice of law by McLemore, and other arguments. For reasons explained further below, we need not address the trial court's analysis with respect to these issues in detail.

{¶16} No claims remained pending against any party after the trial court's decision and judgment entry. Finally, we note that in its decision and judgment entry, the trial court denied a request made by McLemore for the appointment of legal counsel. McLemore timely appealed.

## II. Law and Analysis

{¶17} App.R. 16(A)(3) and Loc.App.R. 11(A)(2)(a) of the Twelfth Appellate Judicial District require appellants to set forth assignments of error in their briefs. Contrary to this requirement, McLemore did not list assignments of error in her brief, but rather five "issues presented for review" and five "arguments." We will construe McLemore's five "issues presented for review" as Assignments of Error Nos. 1 through 5, and McLemore's five "arguments" as Assignments of Error Nos. 6 through 10. *Mallikarjunaiah v. Shankar*, 12th Dist. Warren Nos. CA2019-11-122 and CA2019-11-123, 2020-Ohio-4508, ¶ 20, fn.2. Because McLemore sometimes addresses multiple, unrelated factual and legal issues under single assignments of error, and sometimes addresses the same factual and legal issues under multiple assignments of error, we will simply list all her assignments of error and then separately address the specific issues raised by McLemore.

{¶18} McLemore's Assignment of Error No. 1 (originally McLemore's "Issue Presented for Review No. 1") states:

> WAS THE PLAINTIFF'S ABILITY AND CHANCES TO OBTAIN PROPER LEGAL COUNSEL AND DISCOVERY EFFORTS HINDERED AND CRITICALLY RESTRICTED BY THE DEFENDANTS IN THIS CASE? DID THE PUBLIC OFFICIALS AND SERVANTS WHO ARE ALSO DEFENDANTS IN THIS CASE COMMIT AT A MINIMUM, A CRIME OF DERELICTION OF DUTY AGAINST THE PLAINTIFFS?[3]

{¶19} McLemore's Assignment of Error No. 2 (originally McLemore's "Issue Presented for Review No. 2") states:

> DOES DISABLED AND FINANCIALLY LIMITED/RESTRICTED PLAINTIFF MCLEMORE DESERVE THE APPOINTMENT OF PROPER LEGAL REPRESENTATION WHEN CONSIDERING THE FACTS AND THE ONE OF A KIND CIRCUMSTANCES SURROUNDING THIS CASE?

{¶20} McLemore's Assignment of Error No. 3 (originally McLemore's "Issue Presented for Review No. 3") states:

> DO ALL OF THE ATTACHED DEFENDANTS WHO ARE ALL PUBLIC OFFICIALS AND OR PUBLIC SERVANTS HAVE A DUTY OR OBLIGATION TO PROVIDE TO THE PUBLIC? SHOULD THE DEFENDANTS WHO ARE ALSO PUBLIC OFFICIALS HAVE TO PROVIDE ANSWERS, ACCURATE INFORMATION, REPORTS, FACTS, PUBLIC INFORMATION, AND TRUTH TO FAMILIES WHO HAD A LOVED ONE DIE WHILE IN CUSTODY OF LAW ENFORCEMENT?

{¶21} McLemore's Assignment of Error No. 4 (originally McLemore's "Issue Presented for Review No. 4") states:

> DID THE COURT ERR WHEN DISABLED PLAINTIFF FAITH MCLEMORE'S LEGAL RIGHT TO USE A POA TO ASSIST HER WITH PRESENTING AN ORAL ARGUMENT TO THE TRIAL COURT WAS DENIED?

---

3. We present McLemore's assignments of error as written, with original typographical or grammatical errors, but we have altered the capitalization of the assignments of error to match our court's standard formatting practices.

{¶22} McLemore's Assignment of Error No. 5 (originally McLemore's "Issue Presented for Review No. 5") states:

SHOULD THE COURT DISMISS THIS CASE OVER MISSING SIGNATURES, CLERGY AND PROCEDURAL ERRORS, OR OTHER "NON ATTORNEY" MISTAKES? SHOULD THE COURT GRANT LENIENCY CONSIDERING THE RARE CIRCUMSTANCES AND SERIOUSNESS OF THE ALLEGATIONS?

{¶23} McLemore's Assignment of Error No. 6 (originally McLemore's "Argument No. 1") states:

IT IS A FACT ACCORDING TO THE SLEW OF EVIDENCE THE PLAINTIFFS HAVE OBTAINED AND CAN PROVIDE TO THE COURT THAT ALL THE DEFENDANTS IN SOME WAY DID HINDER THE PLAINTIFF'S DISCOVERY EFFORTS AND DID IN FACT CRITICALLY RESTRICT THE PLAINTIFF'S ABILITY AND CHANCES OF EVER OBTAINING PROPER LEGAL COUNSEL.

{¶24} McLemore's Assignment of Error No. 7 (originally McLemore's "Argument No. 2") states:

THE TRIAL COURT ERRED WHEN BAILIFF KELLY HOKINS DENIED THE RIGHT TO FAITH MCLEMORE'S POWER OF ATTORNEY AGENTS DARRELL PETREY AND TONY THOMAS TO SPEAK ON DISABLED PLAINTIFF FAITH MCLEMORE'S BEHALF, BEFORE THE COURT.

{¶25} McLemore's Assignment of Error No. 8 (originally McLemore's "Argument No. 3") states:

ALL PUBLIC OFFICIALS AND SERVANTS DO HAVE AN OBLIGATION TO PROVIDE THE PUBLIC.

{¶26} McLemore's Assignment of Error No. 9 (originally McLemore's "Argument No. 4") states:

ACCORDING TO THE UNIFORM POWER OF ATTORNEY ACT ORC, THE TRIAL COURT DID ERR IN DENYING THE RIGHT FOR DISABLED PLAINTIFF MCLEMORE TO USE "BEFORE A COURT" AND FOR HER "OTHER RELIEF" TO ASSIST WITH HER ORAL ARGUMENT.

{¶27} McLemore's Assignment of Error No. 10 (originally McLemore's "Argument No. 5") states:

ACCORDING TO SEVERAL CASES AROUND THE US SOME COURTS HAVE GRANTED LENIENCY TO PRO SE LITIGANTS AND HAVE HELD THEM TO A LESSER STANDARD THAN ATTORNEYS.

### A. Preliminary Issues

{¶28} Before addressing the key procedural issues before us in this appeal, we will address three preliminary issues raised by McLemore.

### 1. McLemore's Request for Appointed Counsel

{¶29} First, McLemore argues that the trial court erred in denying her request for appointment of counsel. Unlike in criminal proceedings, there is no general right to counsel in civil litigation. *State, ex rel. Jenkins v. Stern*, 33 Ohio St.3d 108, 110 (1987); *Mootispaw v. Wenninger*, 12th Dist. Brown No. CA2015-08-024, 2016-Ohio-1287, ¶ 13. McLemore has not specified any relevant statute or rule entitling her to appointed counsel in a civil case. *State ex rel. Burnes v. Athens Cty. Clerk of Courts*, 83 Ohio St.3d 523, 524 (1998). Nor has she identified any legal basis for her argument that the trial court should have appointed counsel because she is disabled, and we are aware of none. McLemore cites Ohio Adm.Code 120-1-03 in support of her argument that the trial court should have appointed counsel because she is "financially limited/restricted," but that regulation pertains to the appointment of counsel in criminal cases, not civil cases like this one. For these reasons, we find that the trial court did not err in denying McLemore's request for appointment of counsel.

### 2. McLemore's Request for Power of Attorney Participation

{¶30} Second, McLemore argues that the trial court erred in not allowing her "Power of Attorney Agent" to participate in the case, on her behalf, at a hearing on the pending

motions to dismiss. McLemore attached a notarized Power of Attorney form to her original complaint. In the "special instructions" section of the form, the following language appears:

> I, Faith McClemore [sic] as the next of Kin to Marvin "Andy" Napier, give William Darrell Petrey and Co-Agent Tony Thomas, permission to * * * submit any court filings, lawsuits, and any paperwork on my behalf. I give them permission to represent my interests on my behalf in any court proceedings or hearings. I give them permission to legally represent myself, Faith McClemore [sic].

{¶31} In May 2022, the trial court held a hearing on the various motions to dismiss. McLemore appeared pro se. There is nothing in the record to support the assertion, but McLemore suggests that prior to the hearing, the court denied her request to have her "legal Power of Attorney Agents" "participate in litigation." Specifically, McLemore indicates that she wanted her "Power of Attorney Agents" to assist her with "reading a pre-written 6 page document." There is no reference in the transcript of the hearing to any request by McLemore to have a power of attorney assist her in the proceedings. Nor is there any indication that the court denied that request.

{¶32} Following the hearing, McLemore filed a document styled "Motion to Move Directly to Discovery and Additional Requests of the Court." In it, McLemore stated that she has "two POA agents" who she worked with on preparing her statement. Furthermore, McLemore states that "POA Darrell Petrey" had requested to speak on McLemore's behalf, but was denied. McLemore requested that the court recognize her "legal power of attorney agents."

{¶33} Ohio courts have consistently held that a power of attorney designation does not allow a person not admitted to the practice of law to represent a principal as an attorney at law. *Office of Disciplinary Counsel v. Coleman*, 88 Ohio St.3d 155, 157-58 (2000). A power of attorney document designates an individual as an *attorney in fact*, a role that is distinct and different from an *attorney at law*. The Ohio Supreme court has explained:

> * * * [P]ersons holding powers of attorney have historically not been considered attorneys who can appear in the courts. When a principal through the execution of a "power of attorney" designates another to transact some business that could have been transacted by the principal, he appoints an agent to act for him as an "attorney in fact" or "private attorney." 2A Corpus Juris Secundum (1972) 771, Agency, Section 150; 3 American Jurisprudence 2d (1986) 529, Agency, Section 23. An "attorney in fact" has been consistently distinguished from an "attorney at law" or "public attorney" since at least 1402 when certain attorneys in England were examined by Justices and "their names be entered on the roll" of those permitted to practice in the courts. 1 The Oxford English Dictionary (2 Ed. 1989) 772. Thus, a person holding a power of attorney, but whose name is not entered on the roll, is an attorney in fact, but not an attorney at law permitted to practice in the courts.

*Id.* at 157. The Ohio Supreme Court further explained that the argument that a power of attorney designation enables a person who is not an attorney at law to practice law "would render meaningless the supervisory control of the practice of law" given to the Ohio Supreme Court by Section 2(B)(1)(g), Article IV the Ohio Constitution. *Id.* That provision of the Ohio Constitution authorizes the Ohio Supreme Court to regulate "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Ohio Constitution, Article IV, Section 2(B)(1)(g). The court further explained that "[w]hen a person not admitted to the bar attempts to represent another in court on the basis of a power of attorney assigning *pro se* rights," that person violates R.C. 4705.01. (Emphasis sic.) *Coleman* at 158. R.C. 4705.01 provides:

> No person shall be permitted to practice as an attorney and counselor at law, or to commence, conduct, or defend any action or proceeding in which the person is not a party concerned, either by using or subscribing the person's own name, or the name of another person, unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules.

R.C. 4705.01. There are numerous Ohio cases applying *Coleman* or reaching the same conclusion as *Coleman*. *Savage v. Savage*, 11th Dist. Lake Nos. 2004-L-024 and 2004-L-

040, 2004-Ohio-6341, ¶ 45 ("[T]he well-established law * * * generally permits only a licensed attorney to represent another party in a legal proceeding * * * [A] power of attorney does not give an unlicensed individual the authority to act as an attorney on the behalf of another party"); *State v. Hartman*, 9th Dist. Medina No. 13CA0018-M, 2014-Ohio-2226, ¶ 7, quoting *Coleman* at 157. ("The Supreme Court has promulgated rules with respect to the practice of law in Ohio, and allowing a person holding a power of attorney to essentially act as an attorney at law would 'render meaningless the supervisory control of the practice of law given to [the Supreme Court] by the Ohio Constitution'"); *Ohio State Bar Assn. v. Jackim*, 121 Ohio St.3d 33, 2009-Ohio-309, ¶ 5-9 (non-attorney holding a durable power of attorney filed court papers on principal's behalf; found to be engaged in the unauthorized practice of law).

{¶**34**} Undaunted by these precedents, McLemore argues that a statute, R.C. 1337.53, supports her power of attorney argument. Indeed, R.C. 1337.53 was enacted in 2012, years *after* the Ohio Supreme Court decided *Coleman*, so we must determine whether the enactment of R.C. 1337.53 rendered *Coleman* and similar cases inapplicable.

{¶**35**} The portion of R.C. 1337.53 cited by McLemore states:

> Unless the power of attorney otherwise provides, language in a power of attorney granting general authority with respect to claims and litigation authorizes the agent to do all of the following:
>
> (A) Assert and maintain before a court or administrative agency a claim, claim for relief, cause of action, counterclaim, offset, recoupment, or defense, including an action to recover property or other thing of value, recover damages sustained by the principal, eliminate or modify tax liability, or seek an injunction, specific performance, or other relief;
>
> (B) Bring an action to determine adverse claims or intervene or otherwise participate in litigation * * *.

McLemore misunderstands the meaning of R.C. 1337.53(A) and (B). Those subsections,

when read in context of the whole statute, refer to the ability of a person with power of attorney to stand in the place of the principal (that is, the person who granted the power of attorney) *as a plaintiff*, and do not state or suggest that the person with power of attorney can *represent the principal as an attorney at law*. In authorizing a person with power of attorney to "[a]ssert and maintain before a court or administrative agency a claim* * *," R.C. 1337.53(A) authorizes a person with power of attorney to pursue claims on behalf of a principal. This occurs, for example, when a person with power of attorney for her comatose mother, standing in the place of her mother as a plaintiff and acting on her behalf, brings a negligence lawsuit against the driver who caused the car accident that placed her mother in the coma. But R.C. 1337.53(A) says nothing about a person with power of attorney acting in the capacity of an attorney at law.

{¶36} The same is true with regard to R.C. 1337.53(B)'s authorization of a person with power of attorney to "[b]ring an action to determine adverse claims or intervene or otherwise participate in litigation* * *." This occurs, for example, when a person with power of attorney for her comatose mother, standing in the place of her mother as an intervenor and acting on her behalf, intervenes in a preexisting lawsuit between the mother's business partners regarding ownership shares in a business. Like R.C. 1337.53(A), R.C. 1337.53(B) says nothing about a person with power of attorney acting in the capacity of an attorney at law.

{¶37} Looking even more closely at the language of the statute, R.C. 1337.53(B)'s authorization of a person with power of attorney to "otherwise participate in litigation" does not authorize a person with power of attorney to act as an attorney at law. To read "otherwise participate in litigation" as authorizing an attorney in fact (that is, a person with power of attorney) to act as an attorney at law would conflict with Section 2(B)(1)(g) of Article IV of the Ohio Constitution, which (as explained in *Coleman*) authorizes the Ohio

Supreme Court to regulate "[a]dmission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." But when reviewing the constitutionality of legislation, this court must presume statutes are constitutional. *Desenco, Inc. v. Akron*, 84 Ohio St.3d 535, 538 (1999), citing *Hughes v. Ohio Bur. of Motor Vehicles*, 79 Ohio St.3d 305, 307 (1997). All reasonable doubts must be resolved in favor of a construction that preserves constitutionality. *Id.* Here, there is no doubt that R.C. 1337.53 should not be understood as conflicting with Section 2(B)(1)(g) of Article IV of the Ohio Constitution because McLemore's interpretation of that statute is erroneous.

{¶38} Interpreting R.C. 1337.53 to permit a non-attorney to practice law would also conflict with R.C. 4705.01, which provides that "No person shall be permitted to practice as an attorney and counselor at law * * * unless the person has been admitted to the bar by order of the supreme court in compliance with its prescribed and published rules."

{¶39} In other words, nothing in R.C. 1337.53 modifies *Coleman's* explanation of the difference between an attorney in fact and an attorney at law, nor the court's conclusion that a person with power of attorney, who is not admitted to the practice of law, may not represent a principal as an attorney at law. For all of these reasons, we find that the trial court did not err to the extent it refused to permit "Mr. Darrell Petrey and Mr. Tony Thomas" to act as McLemore's attorneys at law, which decision avoided placing Mr. Petrey and Mr. Thomas in a situation where he/they could have engaged in the unauthorized practice of law.

{¶40} McLemore also specifically argues that Petrey and Thomas, as her powers of attorney, should have been permitted to read a prepared statement at the motion to dismiss hearing on her behalf. We need not consider whether simply reading a statement that McLemore prepared would have constituted the unauthorized practice of law because McLemore has not identified any manner in which she was prejudiced by the trial court's

decision. The record reflects that McLemore was able to speak and express herself during the hearing without any difficulty. Nor has McLemore identified any possible manner in which the trial court's ultimate decision to dismiss the claims or strike her complaint with regard to all parties would have been affected by McLemore's powers of attorney reading a prepared statement. *Smith v. Flesher*, 12 Ohio St.2d 107 (1967), paragraph one of the syllabus ("In order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal") For all of these reasons, McLemore's arguments regarding the individual(s) she allegedly designated as having power of attorney are without merit.

### 3. McLemore's Request for *Pro Se* Leniency

{¶41} Third, McLemore argues—in the context of her discussion regarding the procedural issues presented to us in this appeal—that we should grant "leniency" to her as a pro se party. McLemore's request for leniency as a pro se party is not supported by law. "It is well established that pro se litigants are expected, as attorneys are, to abide by the relevant rules of procedure and substantive laws, regardless of their familiarity with the law." *Fontain v. H&R Cincy Properties, L.L.C.*, 12th Dist. Warren No. CA2021-02-015, 2022-Ohio-1000, ¶ 26. "As a result, pro se litigants are presumed to have knowledge of the law and correct legal procedures so that they remain subject to the same rules and procedures to which represented litigants are bound." *Havens v. Havens*, 12th Dist. Fayette No. CA2022-01-002, 2022-Ohio-3103, ¶ 18. "In other words, '[p]ro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure.'" *Perelman v. Meade*, 12th Dist. Warren No. CA2021-06-054, 2021-Ohio-4247, ¶ 22, quoting *Cox v. Zimmerman*, 12th Dist. Clermont No. CA2011-03-022, 2012-Ohio-226, ¶ 21.

{¶42} McLemore argues that we should disregard Ohio law regarding the

expectations of pro se litigants. She points to two cases. First, McLemore points to *Breck v. Ulmer*, 745 P.2d 66 (Alaska 1987), a decision of the Supreme Court of Alaska. Breck is not controlling in this state and is inconsistent with Ohio controlling authority. It is not applicable here. Second, McLemore points to *Haines v. Kerner*, 404 U.S. 519, 404 U.S. 519 (1972). In *Haines*, a per curiam opinion, the United States Supreme Court stated,

> We cannot say with assurance that under the allegations of the pro se complaint, which we hold to less stringent standards than formal pleadings drafted by lawyers, it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Id.* at 520-21. *Haines* is not applicable here because it merely pertains to the standard applied in interpreting a pro se plaintiff's pleading. *Haines* says nothing about pro se plaintiffs being exempt from complying with the rules of civil procedure.

{¶43} McLemore's arguments are without merit. McLemore must "abide by the relevant rules of procedure and substantive laws, regardless of [her] familiarity with the law." *Fontain* at ¶ 26. "The Ohio Rules of Civil Procedure govern the conduct of all parties equally, and 'we cannot disregard [the] rules to assist a party who has failed to abide by them.'" *Gliozzo v. Univ. Urologists of Cleveland, Inc.*, 114 Ohio St.3d 141, 2007-Ohio-3762, ¶ 16, quoting *Bell v. Midwestern Educational Servs., Inc.*, 89 Ohio App.3d 193, 204 (2d Dist.1993).

{¶44} Having addressed the preliminary issues concerning representation and pro se status raised by McLemore, we turn now to the key procedural and jurisdictional issues that were decided by the trial court in the decision and judgment entry from which McLemore appeals.

### B. Personal Jurisdiction: Failure of Service of Process

{¶45} "It is rudimentary that in order to render a valid judgment, the court must have personal jurisdiction over the defendant." *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984);

*Ata Logistics, Inc. v. Empire Container Freight Station, Inc.*, 12th Dist. Clermont No. CA2020-01-006, 2020-Ohio-4183, ¶ 13. "'Proper service of process is a prerequisite for personal jurisdiction.'" *Fifth Third Bank v. Bolera*, 12th Dist. Butler No. CA2017-03-039, 2017-Ohio-9091, ¶ 15, quoting *Williams v. Gray Guy Group.*, 10th Dist. Franklin No. 16AP-321, 2016-Ohio-8499, ¶ 18. Service of a summons—along with the complaint—is the procedure by which "'a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" *Omni Capital Internatl., Ltd. v. Rudolf Wolff & Co., Ltd.* 484 U.S. 97, 104, 108 S.Ct. 404 (1987), quoting *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-45, 66 S.Ct. 242 (1946). The rules regarding issuance and service of the summons are set forth in Civ.R. 4, and 4.1 through 4.7. Rule 4.1(A)(2) requires that a "return of service" documenting that service was completed in the required manner be filed on the court's docket. Another rule, Civ.R. 4.7, provides for a procedure by which a plaintiff may request that a defendant waive service of the summons; the defendant, in exchange for this waiver, receives additional time to file an answer to the complaint.

{¶46} In this case, the record does not reflect that any summons was ever issued with respect to any defendant, and does not reflect that the Plaintiffs ever requested the issuance of any summons. Likewise, the record does not reflect any return of service documenting completion of service of any summons or complaint by any of the methods of service provided for in Civ.R. 4.1 through 4.6. Nor does the record indicate that Plaintiffs took any steps to utilize the process for waiver of service set forth in Civ.R. 4.7. In other words, the record demonstrates that Plaintiffs completely failed to comply with the mandatory rules applicable to issuance and service of process.

{¶47} The only suggestions in the record that Plaintiffs made any attempt at service were the certificates of service attached to the complaint and the amended complaint. Both

stated that some unidentified person had attempted to serve 31 of the 37 individual defendants by emailing them a copy of the complaint, and later, the amended complaint. The certificates also stated that someone had served three of the individual defendants in person at their places of business. But none of this indicates that the Plaintiffs complied with the applicable rules regarding service. First, the certificates only indicate that someone attempted to serve the *complaint* and the *amended complaint* by email or in-person delivery. Even if these methods of service were valid, the Plaintiffs were required to serve the *summons* as well, and the certificates of service do not indicate that Plaintiffs made any such attempt. Second, email is not a permissible method of service under Civ.R. 4.1 (which provides that the methods of service are certified mail, personal service, or residential service). Third, while Civ.R. 4.1(B) allows for personal service in certain situations, the rule specifically excludes parties to the proceedings from the class of persons who may personally serve defendants. ("[P]rocess * * * may be delivered by the clerk to any person not less than eighteen years of age, who is not a party and who has been designated by order of the court to make personal service of process under this division.") Therefore, neither the attempted service by email nor the attempted service by personal delivery described in the certificates of service were proper methods of service (even if a summons had also been issued).

{¶48} McLemore argues that we should overlook the procedural and jurisdictional deficiencies in this case because of the "seriousness of the allegations of homicide/murder, public corruption, conspiracy, tampering with evidence, forgery, dereliction of duty, [and] deception" that she raises. But we do not have the power to declare that the rules of civil procedure do not apply in a particular case merely because of the nature of the allegations in that case. We do not have the power to rewrite the law. *State ex rel. Schwaben v. School Emps. Retirement Sys.*, 76 Ohio St.3d 280, 285 (1996) ("while it may be tempting

to decide [a] case on subjective principles of equity and fundamental fairness, [a] court has a greater obligation to follow the law"); *Caldwell v. Caldwell*, 12th Dist. Clermont Nos. CA2008-02-019 and CA2008-03-021, 2009-Ohio-2201, ¶ 80,  (noting that this court is not in a position to rewrite the law in order to permit an arguably more equitable result).

{¶49}  In the absence of service of process or the waiver of service by the defendant, a court ordinarily may not exercise jurisdiction over a party the complaint names as a defendant.   *Williams*, 2016-Ohio-8499 at ¶ 18, citing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350, 119 S.Ct. 1322 (1999).  However, a defendant waives any defects in service—and the trial court has personal jurisdiction over the defendant—if the defendant voluntarily appears in the case and fails to move to dismiss for lack of proper service.  *Hunt v. Arboretum Home Owners Assn.*, 12th Dist. Butler No. CA2020-02-025, 2020-Ohio-4947, ¶ 11 ("A trial court lacks personal jurisdiction over a defendant if effective service of process has not been made on the defendant and the defendant has not voluntarily appeared in the case or waived service"); *Lauver v. Ohio Valley Selective Harvesting, L.L.C.*, 12th Dist. Clermont No. CA2016-11-076, 2017-Ohio-5777, ¶ 15 (similar); *Williams*, 2016-Ohio-8499 at ¶ 19 (holding that a plaintiff's failure to perfect service of its original complaint is waived when the defendant appears for any other purpose than to object to jurisdiction); *Maryhew*, 11 Ohio St.3d at 156 (personal jurisdiction may be obtained by service of process, voluntary appearance, or waiver).

{¶50}  The Wilmington Defendants moved to dismiss Plaintiffs' claims pursuant to Civ.R. 12(B)(2), 12(B)(4), and 12(B)(5) in their first appearance in this case, arguing that the trial court lacked personal jurisdiction over the Wilmington Defendants because of insufficient process and insufficient service of process.  Likewise, the OCVJC Defendants moved to dismiss Plaintiffs' claims against the OCVJC Defendants for the same reasons in their first appearance in this case.  In other words, the Wilmington Defendants and the

OCVJC Defendants did not waive defects with service. The Montgomery County Coroner's Office Defendants never appeared in this case, so they also did not waive defects with service. Because McLemore failed to serve the Wilmington Defendants, the OCVJC Defendants, and the Montgomery County Coroner's Office Defendants with a summons and the complaint in the manner required by the Rules of Civil Procedure, and because those defendants did not waive defects with service, we find that the trial court did not abuse its discretion when it dismissed McLemore's claims against those defendants for lack of personal jurisdiction.

{¶51} The same is not the case with regard to the Clinton County Defendants and the Clinton County Coroner's Office Defendants. Those entities, upon first appearing in this case, did not move to dismiss for lack of personal jurisdiction based on failing to serve them with service of a summons and the complaint and did not identify any deficiencies with summons or service. Instead, they moved to strike the complaint for reasons unrelated to personal jurisdiction. Therefore, those defendants waived deficiencies with service. *Hunt*, 2020-Ohio-4947 at ¶ 11; *Lauver*, 2017-Ohio-5777 at ¶ 15. As a result, we find that the trial court erred to the extent it dismissed Plaintiffs' claims against the Clinton County Defendants and the Clinton County Coroner's Office for failure of service and lack of personal jurisdiction.

{¶52} Because we have affirmed the trial court's dismissal of the complaint and amended complaint with respect to the Wilmington Defendants, the OCVJC Defendants, and the Montgomery County Coroner Defendants, the only remaining defendants whom we must consider are the Clinton County Defendants and the Clinton County Coroner Defendants. We therefore turn to examine the trial court's decision granting those defendants' motions to strike the complaint and amended complaint.

### C. Civ.R. 11: Failure to Sign Complaint and Amended Complaint

{¶53} Civ.R. 11 addresses the signing of pleadings, motions, and other documents. The rule states: "A party who is not represented by an attorney shall sign, by electronic signature or by hand, the pleading, motion, or other document * * *." Civ.R. 11 further provides: "If a document is not signed * * *, it may be stricken as sham and false and the action may proceed as though the document had not been served." Civ.R. 11.

{¶54} As stated above, neither the complaint nor the amended complaint was signed by any of the Plaintiffs, including McLemore. The names of all four Plaintiffs were typed at the end of the complaint after the closing word, "Respectfully," and three of their names were typed at the end of the amended complaint after "Respectfully." But merely typing one's name on a pleading fails to satisfy the signature requirement of Civ.R. 11. *Robinson v. Lorain Cty. Printing & Publishing Co.*, 9th Dist. Lorain No. 21CA011711, 2023-Ohio-3, ¶ 12 (rejecting argument that typing one's name on a pleading satisfies the signature requirement of Civ.R. 11). Nor does the fact that Civ.R. 5(E) permits courts to adopt local rules allowing electronic signatures in any way apply to the names typed on the complaint and the amended complaint in this case. This is the case because the Clinton County Court of Common Pleas has not adopted any local rule permitting the filing of documents by electronic means, other than by fax machine. Even then, the court's rule does not permit the filing of complaints by fax machine. Loc.R. 8(B)(a) of the Court of Common Pleas of Clinton County, General Division. And even when electronic signatures are permitted, they must be preceded by the notation "/s/." Loc.R. 8(G)(1)(b). The notation "/s/" is not present in either the complaint or amended complaint. There is therefore no local rule that would permit the typed names of the Plaintiffs in the complaint and amended complaint to constitute valid signatures under Civ.R. 5(E).

{¶55} The record reflects that, in violation of Civ.R. 11, the pleadings were not signed by any of the four named Plaintiffs (or a representative of Andy's estate). Based on this

failure to sign, Civ.R. 11 expressly authorized the trial court to strike the complaint and the amended complaint "and proceed as though the document[s] had not been served." Based on the Civ.R. 11 violation, we find that the trial court did not err in granting the motions to strike filed by the Clinton County Defendants and the Clinton County Coroner Defendants.[4]

{¶56} With no complaints pending before the court, the court was justified in dismissing the action in its entirety as to all defendants.

### D. McLemore's Remaining Arguments

{¶57} Most of the arguments in McLemore's brief concern the merits of her 42 U.S.C. 1983 claim. For example, McLemore argues that the defendants "withheld information, facts, evidence, and answers from Plaintiffs during the Plaintiff's discovery efforts," that one of the defendants requested that Plaintiff obtain a forensic expert report and then "discredited" the "over-qualified" expert's report, that one of the defendants lied to "the Plaintiff's and the Plaintiff's POA Agents" about obtaining permission to obtain Andy's autopsy records, that another individual defendant called the "POA Agent" "mental" and hung up on him, that various defendants failed to investigate or communicate about Plaintiffs' allegations, and many other such allegations. All these allegations are, at this point in the case, mere allegations. No discovery was conducted in this case prior to the appeal. Nor has a trial been held to evaluate Plaintiffs' allegations. In fact, because we have held that the trial court did not err in dismissing all of Plaintiffs' claims with regard to all named defendants, all of McLemore's arguments concerning the merits of the 42 U.S.C. 1983 claim are moot. We therefore do not need to address any of McLemore's arguments

---

4. If we had not already determined that the trial court did not err in dismissing all claims against the Wilmington Defendants, the OCVJC Defendants, and the Montgomery County Coroner Defendants for failure to serve them with a summons and the complaint, our analysis regarding the trial court's decision to strike the pleadings with respect to the Clinton County Defendants and the Clinton County Coroner Defendants would apply equally to the Wilmington Defendants, the OCVJC Defendants, and the Montgomery County Coroner Defendants.

concerning the merits of her case.[5]

### III. Conclusion

{¶58} The trial court properly dismissed all claims against the Wilmington Defendants, the OCVJC Defendants, and the Montgomery County Coroner Defendants pursuant to Civ.R. 12(B)(2) and (5) because Plaintiffs failed to serve summons and the complaint on those defendants, and because those defendants did not waive defects with service. The trial court lacked personal jurisdiction with respect to those defendants. Likewise, the trial court did not err when it struck the complaint and amended complaint with respect to the Clinton County Defendants and the Clinton County Coroner Defendants (and with regard to the other defendants as well) because Plaintiffs failed to sign the pleadings as required by Civ.R. 11.

{¶59} We have reviewed all of McLemore's arguments below and on appeal. Given our resolution of the service of process and Civ.R. 11 issues, none of McLemore's remaining arguments need to be addressed in this opinion. We overrule all of McLemore's issues and arguments, recast as her ten assignments of error.

{¶60} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.

---

5. After discussing many of her arguments concerning the merits of her 42 U.S.C. 1983 claim in her appellate brief, McLemore stated that:

> There are many other examples for each defendant that we the Plaintiffs *would love to discuss*, go into depth, and share with the court that prove ALL of our allegations true. *We can prove* the defendants conspired together and or were coerced into whitewashing the heinous crimes committed against our father and with the motive to escape all legal responsibility and accountability.

(Emphasis added.) McLemore appears to have acknowledged that many of the arguments in her brief concern issues that are not currently before this court.