[Cite as *State v. Colquitt*, 2023-Ohio-3997.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-14 |
| | : | |
| v. | : | Trial Court Case No. 20 TRC 02929 |
| | : | |
| PIERRE COLQUITT | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 3, 2023

. . . . . . . . . . .

COLIN B. COCHRAN, Attorney for Appellant

MATTHEW DIBARTOLA, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} Defendant-Appellant Pierre Colquitt was convicted of operating a vehicle while under the influence of drugs or alcohol (OVI), in violation of R.C. 4511.19(A)(1)(d), a first-degree misdemeanor, and failing to stop at a stop sign, in violation of R.C. 4511.43(A), a minor misdemeanor, after a jury trial in the Clark County Municipal Court.

Colquitt appeals from his convictions, claiming that he was denied a fair trial and that the trial court did not properly notify him of his jail time credit. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} According to the State's evidence at trial, in the early morning hours of March 13, 2020, Trooper Robert Sabo of the Ohio State Highway Patrol was driving southbound on South Limestone Street in Springfield when he saw Colquitt's vehicle approaching from a side street to his right. Sabo believed Colquitt would drive past the stop sign at the intersection and hit him. Colquitt ended up running the stop sign and stopping on Limestone Street in the right southbound lane. (At that location, there were two southbound lanes.)

{¶ 3} After Colquitt turned onto South Limestone Street, Trooper Sabo got behind Colquitt's car and pulled him over. Upon approaching Colquitt, the trooper noticed that he had a freshly-lit cigarette, which Sabo associated with an attempt to mask an odor, and that Colquitt's eyes were bloodshot. After Colquitt extinguished his cigarette, Trooper Sabo smelled an odor of alcohol. When the trooper asked Colquitt for his license and insurance, Colquitt got out of his car to talk, which the trooper also found unusual. Trooper Sabo had Colquitt reenter his vehicle. While talking to the trooper, Colquitt said that he had consumed three shots of Hennessey and two beers.

{¶ 4} Trooper Sabo asked Colquitt to exit his vehicle, and Colquitt agreed to take field sobriety tests. The officer testified that it was a breezy, clear night and the ground was wet from earlier rain; the ground was level. Trooper Sabo conducted the horizonal

gaze nystagmus test and observed six clues of impairment. Next, the trooper administered the walk and turn test; Sabo testified that Calquitt performed "not very well" in that he started the test before being instructed to, could not maintain his balance, raised his hands from his sides, stepped off the line, did not touch heel to toe, and took an improper turn. Third, Trooper Sabo administered the one-legged stand test and observed additional signs of impairment. Sabo placed Colquitt under arrest for OVI and put him in his cruiser.

{¶ 5} Trooper Sabo transported Colquitt to the Springfield Highway Patrol Post. There, he read Colquitt a BMV 2255 form and issued a citation. Colquitt took a breathalyzer test on an Intoxilyzer 8000 machine, which was functioning properly. The results showed a breath alcohol concentration (BrAC) of 0.160 grams per 210 liters, which is twice the legal limit.

{¶ 6} Colquitt was charged with two counts of OVI, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d), as well as a stop sign violation under R.C. 4511.43(A). He waived his right to an attorney and represented himself throughout much of his case. The trial court granted Colquitt additional time to request a jury trial and to file a motion to suppress evidence. Colquitt promptly filed a motion to suppress the results of the breathalyzer test. Thereafter, Colquitt filed several purported supplements to his motion to suppress and other motions, none of which concerned matters related to this case. It appears that Colquitt's motion to suppress was denied after a hearing, but the record contains neither a suppression hearing transcript nor a written ruling on the motion.

{¶ 7} On November 12, 2020, defense counsel entered an appearance on Colquitt's behalf, entered a plea of not guilty, demanded a jury trial, and requested a pretrial hearing. The court scheduled a final pretrial conference for December 8, 2020, and the trial for the following day. At defense counsel's request, the dates were modified to December 29 and December 30, respectively. The record does not contain a transcript of the final pretrial conference, but it appears that Colquitt again waived his right to counsel; a written waiver of counsel was filed on December 30, 2020. Colquitt represented himself at trial, with his former defense counsel available as stand-by counsel.

{¶ 8} During the jury trial, the State presented the testimony of Trooper Sabo and John Thomas, a breath test inspector with the Ohio Department of Health. Colquitt testified on his own behalf. He admitted to going beyond the stop sign but stated that he did not go as far as the trooper indicated and that he had done so to see the coming cross-traffic. Colquitt emphasized that Trooper Sabo had told him he was doing great during the eye test and that the cruiser video did not show that his eyes were bloodshot. He also stated that he was very cooperative and truthful, was not "weeble wobble," and was not impaired to the point where he was incoherent. During closing arguments, Colquitt also challenged Thomas's testimony that there were two breath samples from Colquitt (giving readings of 0.160 and 0.161), with Colquitt's result taken from the lower number.

{¶ 9} After deliberating, the jury found Colquitt guilty of all offenses, and the trial court also found that Colquitt had violated R.C. 4511.43(A), a minor misdemeanor. (There

is no right to a jury trial on minor misdemeanor offenses.) The court ordered a presentence investigation and scheduled sentencing for January 19, 2021.

{¶ 10} Colquitt did not appear for the sentencing hearing, and the court issued a capias for his arrest. More than two years later, on February 22, 2023, Colquitt was arrested on the outstanding warrant, and his sentencing hearing was reset for March 10, 2023. Colquitt told the court that he had been arrested in Warren County on charges out of Warren and/or Butler County and on a federal warrant. He claimed that he was entitled to credit for the time he had served since his arrest on those other charges.

{¶ 11} With respect to the two OVI offenses, the State elected to proceed on the violation of R.C. 4511.19(A)(1)(d) (Count B). The court sentenced Colquitt to 120 days in the Clark County Jail, a three-year driver's license suspension, and a $375 fine, plus court costs. No additional fine or court costs were imposed for the minor misdemeanor offense (Count C). The court indicated that Colquitt was to receive credit for time served in the Clark County Jail from February 22, 2023.

{¶ 12} Colquitt appeals from his convictions, raising two assignments of error. We will address them in reverse order.

## II. Denial of a Fair Trial

{¶ 13} In his second assignment of error, Colquitt claims that he was denied the right to a fair trial pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. He states: "The trial court, throughout the presentation of the evidence and testimony, frequently walked Colquitt through and often times correct[ed] him on trial procedure as well as the proper way to question and handle the witnesses providing

testimony. The trial court's constant instruction to Colquitt resulted in the jury doubting the [sic] Colquitt's credibility, competence, and ultimately the believability of Colquitt's evidence and arguments, resulting in a jury that was not impartial." Appellant's Brief at 11.

{¶ 14} Colquitt elected to represent himself at trial, as was his constitutional right. *See Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *State v. McAlpin*, 169 Ohio St.3d 279, 2022-Ohio-1567, 204 N.E.3d 459. However, "pro se litigants are presumed to have knowledge of the law and legal procedures" and are "held to the same standard as litigants who are represented by counsel." *State ex rel. Fuller v. Mengel*, 100 Ohio St.3d 352, 2003-Ohio-6448, 800 N.E.2d 25, ¶ 10, quoting *Sabouri v. Ohio Dept. of Job & Family Servs.* 145 Ohio App.3d 651, 654, 763 N.E.2d 1238 (10th Dist.2001); *Harshman Dynasty, L.L.C. v. Mason*, 2d Dist. Montgomery No. 25873, 2014-Ohio-1108, ¶ 25 ("pro se parties are held to the same standards as members of the bar with respect to procedural matters"). As stated by the Twelfth District, "[p]ro se litigants are not to be accorded greater rights and must accept the results of their own mistakes and errors, including those related to correct legal procedure." (Citations omitted.) *McLemore v. Clinton Cty. Sheriff's Office*, 2023-Ohio-1604, 214 N.E.3d 723, ¶ 41 (12th Dist.). Accordingly, a trial court generally does not act improperly when it ensures that a pro se litigant follows appropriate rules and procedures regarding the selection of jurors, presentation of evidence, and questioning of witnesses.

{¶ 15} Upon review of the transcript of Colquitt's trial, we find nothing in the trial court's conduct that went beyond the trial court's role as an impartial arbiter. The trial

court took the additional step of instructing the jury: "If, during the course of this trial, this Court did anything that you consider an indication of the Court's view on the facts, you are instructed to disregard it." We presume that the jury followed the trial court's instruction. *E.g., State v. Green*, 2d Dist. Montgomery No. 28614, 2020-Ohio-5206, ¶ 91; *State v. Jones*, 90 Ohio St.3d 403, 414, 739 N.E.2d 300 (2000) ("Juries are presumed to follow the court's instructions"). We find no support for Colquitt's contentions that the trial court affected the impartiality of the jury or that he was deprived of a fair trial.

{¶ 16} Colquitt's second assignment of error is overruled.

### III. Jail Time Credit

{¶ 17} In his first assignment of error, Colquitt asserts that he was not properly notified of his jail time credit in accordance with R.C. 2929.19(B)(2)(g)(i).

{¶ 18} "The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions." *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶ 7. As noted by the Ohio Supreme Court, "the [federal] Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status." (Citations omitted.) *Id.* However, "[t]he United States Supreme Court has never directly addressed the extent to which the equal-protection clause may provide a right to jail-time credit." *State v. Moore*, 154 Ohio St.3d 94, 2018-Ohio-3237, 111 N.E.3d 1146, ¶ 23.

{¶ 19} For felony cases in which a prison sentence is imposed, the right to jail time credit is codified in R.C. 2967.191. In addition, R.C. 2929.19(B)(2)(g)(i), which governs

felony sentencing hearings, requires the trial court to "[d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term * * *." *See also* Ohio Adm.Code 5120-2-04.

{¶ 20} For cases in which a jail sentence is imposed, such as the case before us, jail time credit is governed by R.C. 2949.08. Of relevance here, R.C. 2949.08(C)(1) states:

> If the person is sentenced to a jail for a felony or a misdemeanor, the jailer in charge of a jail shall reduce the sentence of a person delivered into the jailer's custody * * * by the total number of days the person was confined for any reason arising out of the offense for which the person was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the person's competence to stand trial or to determine sanity, confinement while awaiting transportation to the place where the person is to serve the sentence, and confinement in a juvenile facility.

{¶ 21} In this case, the judgment of conviction indicated that Colquitt would receive credit for time served in the Clark County Jail since February 22, 2023. Colquitt argues that this notification was insufficient to satisfy R.C. 2929.19(B)(2)(g)(i), but that statute

does not apply to misdemeanor cases. We find no similar notification requirement for misdemeanor sentencing hearings. Moreover, we note that a transcript of Colquitt's sentencing hearing is not part of the record. Consequently, we must presume the regularity of that proceeding as it relates to the issue of the notification of jail time credit. *See, e.g., State v. Kreuzer*, 2d Dist. Greene No. 1998-CA-100, 1999 WL 959206, *5 (Aug. 6, 1999) ("[A]bsent a transcript of the proceedings, this Court must presume regularity in the proceedings before the trial court.").

{¶ 22} Colquitt's first assignment of error is overruled.

## IV. Conclusion

{¶ 23} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.