[Cite as *Moore v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-6109.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Benjamin R. Moore, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 24AP-337 |
| v. | : | (Ct. of Cl. No. 2022-00320JD) |
| Ohio Department of Rehabilitation and Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on December 31, 2024

**On brief:** *Carl G. McMahon*, for appellant.

**On brief:** *Dave Yost*, Attorney General, *Eric A. Walker*, and *Charles Janes*, for appellee.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Benjamin R. Moore, appeals the judgment of the Court of Claims of Ohio entered on April 29, 2024, overruling Moore's objections to the magistrate's March 1, 2024 decision and granting judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} On April 11, 2022, Moore, a former inmate in the custody and control of ODRC at Belmont Correctional Institution, filed a negligence action against ODRC arising from an incident on May 28, 2019 wherein he sustained injuries after another inmate threw

boiling water on him as he slept in his assigned bed.  Moore alleged that the correction officers on duty at the time of the incident should have seen or heard the inmate enter the dormitory kitchenette, fill a plastic container with water, heat the water to boiling in a microwave located in the kitchenette, and then throw the boiling water on Moore as he slept.

{¶ 3}  After the Court of Claims denied the parties' cross-motions for summary judgment, a trial was held before a magistrate on July 31, 2023.  In a decision issued March 1, 2024, the magistrate recommended judgment in favor of ODRC.  Moore filed objections to the magistrate's decision but failed to timely file a transcript of the trial in support of the objections.  Accordingly, our factual recitation is based on the magistrate's summary of the evidence[1] presented and factual findings derived from that evidence.  *See Huffer v. Huffer*, 10th Dist. No. 12AP-883, 2013-Ohio-1575, ¶ 2 (because the appellant failed to file a transcript with the trial court to support his objections to the magistrate's decision, the factual summary is based on the magistrate's factual findings).

{¶ 4}  Moore, who testified via deposition, averred that he and another inmate, Steven Toby, were housed in the same dormitory.  At approximately 7:00 or 8:00 p.m. on May 27, 2019, Moore and Toby got into an argument which escalated to a physical altercation, during which Moore punched Toby in the face hard enough to briefly render Toby unconscious.  Later that evening, Toby and Moore resolved their dispute; accordingly, Moore went to sleep that night with no expectation that Toby would attempt to harm him. Moore did not notify any prison staff about the altercation or otherwise communicate any concern for his safety.  At approximately 4:45 a.m. on May 28, 2019, Moore was asleep in his assigned bed.  He awoke to a burning sensation caused by boiling water Toby had poured on him; Toby then began punching Moore.  Surveillance video captured the attack. Moore suffered burns to his face, arms, back, chest, and shoulders; as a result, he was hospitalized for three weeks.

---

[1] As did the Court of Claims, we note that while a summary of evidence is fundamentally distinct from specific findings of fact, the magistrate's decision substantially complies with Civ.R. 53. *See Slosser v. Supance*, 10th Dist. No. 20AP-15, 2021-Ohio-319, ¶ 14 ("[I]f a review of the magistrate's decision recites the facts and legal conclusions and, when considered with the rest of the record, the decision forms an adequate basis to decide the issues on appeal, it substantially complies with Civ.R. 53."). We further note that pursuant to Civ.R. 53(D)(3)(a)(ii), "a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law." In the present case, neither party requested findings of fact and conclusions of law or argued that such are required by law.

{¶ 5} Moore testified that inmates regularly used the kitchenette microwave to heat food and beverages; however, according to Moore, there was no legitimate reason for Toby to use the microwave at 4:45 a.m. Moore further testified that due to the proximity of the kitchenette to their workstation, the on-duty officers would have been able to see an inmate enter and exit the kitchenette and hear the microwave being used.

{¶ 6} Two officers, Michael Neavin and Bethany Williams, were on duty at the time of the incident. Neavin described the layout of the dormitory, including where the officers' workstation is situated in relation to the kitchenette. Neavin averred that inmates were permitted to use kitchenette resources, including the microwave, to prepare food and beverages which they were permitted to have in their sleeping areas. He further averred that inmates were permitted to use the bathroom at any time during the night, except during third shift counts occurring at 11:30 p.m., 2:00 a.m., and 4:00 a.m. After the 4:00 a.m. count cleared at approximately 4:30 a.m., inmates were permitted to use the bathroom and/or use the kitchenette resources. Neavin further testified that he had been trained on prison policies and procedures and that no policy or procedure restricted inmate usage of the kitchenette at 4:45 a.m.

{¶ 7} Neavin also testified that sometime after the incident, he viewed surveillance footage of Toby in the kitchenette just before the attack on Moore; Toby's actions raised no concerns. He further averred that although he and Williams were at their nearby workstation and thus would have been able to observe Toby using the microwave, Toby's actions would not have aroused suspicion because inmates regularly heated up bowls of food or water. Neavin further testified that although officers could view on their computer screens the live feed from security cameras located in the dormitory, they typically did so only upon becoming aware of an incident; in this case, neither he nor Williams had any reason to know of the attack on Moore until after it occurred. This is so because loud noise in the dormitory emanating from large fans, a malfunctioning shower, and ice machines would have made it difficult to hear any activity near Moore's bed. Neavin further testified that prior to the incident neither Moore nor Toby reported to him that they had been in an altercation the night before; had either done so, both would have been placed in segregation.

{¶ 8}   James Drozdowski, a former employee of the Lorain County Sheriff's Office who served as director of the Lorain County Jail for several years, testified as an expert witness on behalf of Moore.   Drozdowski testified regarding an email allegedly sent by one of the prison unit managers indicating that inmates were not permitted to use the microwave in the early morning; as such, the officers on duty at the time of the attack should have stopped Toby from using the microwave.  He acknowledged, however, that he never saw either the alleged email or any written policy or directive restricting use of the microwave or kitchenette in the early morning hours. Drozdowski further averred that even if no policy restricted Toby from using the microwave at 4:45 a.m., it was Drozdowski's understanding that inmates were supposed to remain in their beds until 6:00 a.m.; however, he did not make clear from what evidence he derived this understanding. Drozdowksi opined that an inmate walking around with a bowl at 4:45 a.m. should have raised suspicion with the on-duty officers such that they had an obligation to intercede; had they done so, the incident involving Moore probably would not have occurred.  Drozdowski acknowledged that his opinion might be affected if testimony established that it was not unusual for inmates to use the kitchenette in the early morning hours.

{¶ 9}   The magistrate found that prior to the attack, neither Moore nor Toby notified prison staff of their previous altercation, nor did Moore express any concern about his safety.  The magistrate further found no support for Moore's assertion that the on-duty officers knew or should have known about the previous altercation based on surveillance footage, as no evidence demonstrated the altercation was captured on surveillance footage or that any prison staff saw or should have seen any such footage.  The magistrate also found that Moore failed to demonstrate Toby was not permitted to be in the kitchenette at 4:45 a.m. or that Toby had no reason to be microwaving water at that time.   In this regard, the magistrate relied on Neavin's testimony that inmates were permitted to use the kitchenette once the 4:00 a.m. count was cleared and that inmates commonly obtained heated water from the kitchenette for preparing food or beverages.  The magistrate also found, after viewing surveillance footage of Toby's conduct while in the kitchenette and after walking out of it, his actions were insufficient to alert the on-duty officers of an impending attack.  Specifically, the magistrate found that Toby was only in the kitchenette for approximately 65 seconds and thereafter calmly walked out.  Based on his factual

findings, the magistrate determined that Moore failed to establish by a preponderance of the evidence that ODRC's employees had actual or constructive notice that Toby would attack Moore; as such, ODRC was not liable for the attack. Thus, the magistrate recommended judgment in favor of ODRC.

{¶ 10} In his objections to the magistrate's decision, Moore primarily challenged the magistrate's recitation of the evidence presented at trial. In doing so, Moore cited to various portions of the trial transcript, including his own deposition testimony as well as the live testimony provided by Neavin and Drozdowski at trial. ODRC did not file a response to the objections. In a judgment entry filed April 29, 2024, the Court of Claims noted that Moore had failed to support his objections with either a transcript of the trial or an affidavit of evidence as required by Civ.R. 53(B)(3)(iii). Accordingly, the court accepted the magistrate's findings of fact as true and limited its consideration of the objections to review of the magistrate's legal conclusions. Upon independent review, the court determined that the magistrate properly applied the law to the facts as determined by the magistrate and overruled the objections to the magistrate's legal conclusions.

{¶ 11} On May 22, 2024, Moore filed a notice of appeal from the Court of Claims' judgment. Thereafter, on June 17, 2024, Moore filed in the court a transcript of the trial. On July 1, 2024, the court clerk filed a document indicating it served this court with a copy of the case docket, including the transcript of proceedings. Thereafter, on July 22, 2024, Moore filed his brief in this court, setting forth five assignments of error. On August 14, 2024, ODRC filed a response brief, arguing that because Moore did not file the trial transcript or an affidavit of evidence with the court in time for its consideration of his objections, this court is precluded from considering Moore's assignments of error because they relate to the magistrate's factual findings and he did not argue that the plain error doctrine applies. On August 29, 2024, Moore filed a reply brief along with a motion requesting this court remand the case to the Court of Claims. In his reply brief, Moore alludes to the court's "obviously plain error" in adopting the magistrate's decision. (Moore's Brief at 4.) In his motion, Moore argued that ODRC's defense was "based upon a technicality found in [Civ.R. 53] regarding the issue of a transcript." (Mot. for Remand at 2.) Moore asserted the court had before it the transcript of his deposition testimony and all the exhibits he offered at the trial; according to Moore, this evidence allowed the court to

conduct a full review of the magistrate's decision. Moore requested that we remand the case to the Court of Claims "for further review and decision to eliminate [ODRC's] Civil Rule 53 transcript objections." (Mot. for Remand at 2.) By journal entry filed September 3, 2024, this court summarily denied Moore's motion to remand.

## II.  Assignments of Error

{¶ 12}  Moore advances the following five assignments of error for our review:

> [I.] The Trial Court erred by concluding that the Appellee did not have actual nor constructive notice of the impending boiling water attack on Appellant based upon the prison's own security cameras and taped footage.

> [II.] The Trial Court erred by concluding that the videotape of inmate Steven Toby microwaving boiling water in the kitchenette was not actual and/or constructive notice of the impending boiling water attack on Appellant based upon the prison's own security cameras feed to the correction officer's office desk computer and the corrections officer's open office presence next to the kitchenette microwave.

> [III.] The Trial Court erred by failing to find the Appellee negligent for failing to protect Appellant from the boiling water attack based upon Ohio Court and Ohio Statutory Law and for negligently failing to enforce the prison's own policies and procedures.

> [IV.] The Trial Court erred by excluding evidence contained in Appellant's Exhibits 10(A) and 10(B).

> [V.] The Trial Court erred by failing to award damages to Appellant for his severe burns and permanent injuries arising from Appellees' negligence.

## III.  Discussion

{¶ 13}  As indicated above, Moore failed to file a transcript of the trial when he filed his objections with the Court of Claims. Civ.R. 53(D)(3)(b)(iii) provides that "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iv) explains that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal

conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." "In other words, the failure to raise a proper objection to the magistrate's decision in the trial court waives all but plain error on appeal." *Huffer* at ¶ 6.

{¶ 14} Here, to the extent Moore challenges the magistrate's factual findings, he failed to provide the court with a transcript of the trial, and therefore, cannot challenge the magistrate's findings on appeal. *Id.* at ¶ 7, citing *Denittis v. Aaron Constr., Inc.*, 11th Dist. No. 2011-G-3031, 2012-Ohio-6213, ¶ 24, citing *DiNunzio v. DiNunzio*, 11th Dist. No. 2006-L-106, 2007-Ohio-2578, ¶ 17. Therefore, because appellant failed to provide a transcript to the court for ruling on the objections to the magistrate's decision, this court is bound by the factual findings, subject to plain error, and any legal issues raised. *Id.* at ¶ 8, citing Civ.R. 53(D)(3)(b)(iv) and *Petty v. Equitable Prod. & E. States Oil & Gas, Inc.*, 7th Dist. No. 05 MA 80, 2006-Ohio-887, ¶ 23-24. As we observed in *Huffer*, "[i]n civil cases, the plain error doctrine applies only in 'the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basis fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying legal process itself.' " *Id.* at ¶ 8, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. We further observed that "[t]he doctrine implicates errors that are 'obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings.' " *Id.*, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982).

{¶ 15} Initially, we note that in his appellate brief Moore does not acknowledge his failure to file a transcript of the trial in support of his objections or request that we find plain error. Not until his reply brief does Moore address these issues. As to his failure to file a transcript, Moore asserts that he "timely filed the necessary transcript of [his deposition] testimony as well as all of [his] exhibits" and argues that "[t]his constitutes sufficient evidence for the Trial Court Judge to make a thorough review of the Magistrate's decision." (Moore's Reply Brief at 8.) Moore also asserts for the first time that the court "engaged in plain error." (Moore's Reply Brief at 8.) However, a reply brief affords an

appellant an opportunity to respond to an appellee's brief; it is not to be used by an appellant to raise new issues for review. *State v. Mitchell*, 10th Dist. No. 10AP-756, 2011-Ohio-3818, ¶ 47, citing *State v. McKinney*, 10th Dist. No. 08AP-23, 2008-Ohio-6522, ¶ 33. Generally, this court " 'will not address an argument raised for the first time in a reply brief.' " *State v. Karabinos*, 10th Dist. No. 17AP-113, 2017-Ohio-7334, ¶ 11, quoting *Hadden Co., L.P.A. v. Zweier*, 10th Dist. No. 15AP-210, 2016-Ohio-2733, ¶ 15, citing *State v. Shedwick*, 10th Dist. No. 11AP-709, 2012-Ohio-2270, ¶ 50.

{¶ 16} Further, Moore's assertion that his deposition testimony and exhibits alone constitute sufficient evidence for the Court of Claims to thoroughly review the magistrate's decision runs afoul of Civ.R. 53 (D)(3)(b)(iii), which, as already noted, requires that objections to factual findings must be supported by a transcript of "*all of the evidence submitted to the magistrate relevant to that finding.*" (Emphasis added.) In addition, Moore's first, second, third, and fifth assignments of error are based not only on his own testimony, but on the live testimony presented by Neavin and Drozdowski as well. Essentially, Moore contends that his testimony and that of Drozdowki should be credited over the testimony offered by Neavin regarding prison policies related to an inmate's use of the kitchenette facilities in the early morning and/or whether Toby's actions in microwaving a bowl of water should have alerted the on-duty officers that he was doing so for nefarious reasons. In his fourth assignment of error, Moore contends the court erred by excluding exhibits 10(A) and (B) at trial and references the trial transcript for an explanation as to why the magistrate declined to admit these exhibits. However, our inability to review the transcript of the trial due to Moore's failure to file it before the trial court upon objections makes it impossible for us to overturn the magistrate's credibility determinations, *see Huffer*, 2013-Ohio-1575, at ¶ 9, citing *Taylor v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 11AP-385, 2011-Ohio-6060, ¶ 13, or the magistrate's reasons for excluding the exhibits. We can find no obvious error in the magistrate's credibility determinations or reasons for declining to admit the exhibits. Further, Moore does not explain why this court should find plain error under the circumstances of this case. Even if Moore had properly raised his plain error argument, this case does not present an extremely rare circumstance requiring application of that doctrine in order to prevent harm that seriously affects the basic fairness, integrity, or public reputation of the judicial

process. *Huffer* at ¶ 9, citing *Goldfuss* at syllabus. Accordingly, we conclude the court did not commit plain error.

{¶ 17} Moreover, to the extent Moore suggests the Court of Claims overruled his objections upon a technicality because he failed to file a transcript, this court has observed that "the mandate of filing a transcript found in Civ.R. 53(D)(3)(b)(iii) is not a mere technicality. The obvious and practical reason for Civ.R. 53(D)(3)(b)(iii) is that, without a transcript of the proceedings before the magistrate, it is not possible for a trial court to review the arguments relating to issues of fact because it has no testimony before it to weigh and assess." *Id.* at ¶ 10.

{¶ 18} Finally, as we have already noted, on June 17, 2024, Moore filed in the Court of Claims a transcript of the trial proceedings. This filing occurred well after he filed his objections, well after the court issued its judgment, and well after he filed his notice of appeal. This court has stated that "[o]n appeal, we must ignore a transcript that was not timely provided to the trial court." *J.C. v. A.M.*, 10th Dist. No. 24AP-174, 2024-Ohio-5664, ¶ 19, citing *Kormanik, Grdn. v. HSBC Mtge.*, 10th Dist. No. 12AP-188, 2012-Ohio-5975. "When an objecting party fails to file a transcript or affidavit of evidence with the trial court in accordance with Civ.R. 53, but files the transcript after an appeal has been filed, the appellate court is precluded from considering the transcript of the [trial]." *Id.*, citing *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728 (1995), and *Williams v. Gray Guy Group, L.L.C.*, 10th Dist. No. 16AP-321, 2016-Ohio-8499 (this court is precluded from considering the transcript when defendants failed to file a transcript with their objections to a magistrate's recommendations but filed a transcript after the court overruled the objections and adopted the magistrate's decision).

{¶ 19} For all the foregoing reasons, Moore's five assignments of error are overruled.

## IV. Conclusion

{¶ 20} Having overruled Moore's five assignments of error, we hereby affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BEATTY BLUNT and BOGGS, JJ., concur.

_____