**[Cite as *In re Guardianship of K.A.H.*, 2025-Ohio-1668.]**

IN THE COURT OF APPEALS OF OHIO

TENEN... TENTH APPELLATE DISTRICT

In the Matter of Guardianship of K.A.H.,  :

[April Clark, Mother,  :

             Appellant].  :

                   :

No. 24AP-193
(Prob. No. 616530)

(REGULAR CALENDAR)

---

D E C I S I O N

Rendered on May 8, 2025

---

**On brief:** *April Clark*, pro se.

---

APPEAL from the Franklin County Court of Common Pleas,
Probate Division

PER CURIAM

{¶ 1} Appellant, April Clark, appeals the judgment of the Franklin County Court of Common Pleas, Probate Division, which removed Clark as guardian of the person of her adult son, K.A.H. For the following reasons, we affirm the probate court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On April 19, 2022, Clark filed an application with the probate court to be appointed guardian of the person of her adult son, K.A.H., whom she alleged was incompetent because of mental illness and, particularly, his "inability to exercise reasonable judgment based on remaining in compliance with medication treatment plan including antipsychotic drugs used to stabilize and manage [his] diagnosis." (Apr. 19, 2022 Application for Appointment of Guardian of Alleged Incompetent at 1.) Clark filed with her application a statement of expert evaluation completed by Abdul Q. Hasan, M.D., who stated that K.A.H. is mentally impaired due to a diagnosis of paranoid schizophrenia. Dr. Hasan stated that K.A.H. has auditory and visual hallucinations, delusions, paranoia, poor insight and judgment, and can be non-compliant with his medication. He also reported

No. 24AP-193

that K.A.H. had undergone three psychiatric hospitalizations in about a year and "[h]as been very aggressive." (Apr. 19, 2022 Statement of Expert Evaluation at 2.)

{¶ 3} Investigator Erik von Frese filed a report in which he noted that K.A.H. was currently linked with Southeast, Inc. ("Southeast"), a community mental health agency. K.A.H., however, denied to von Frese having been diagnosed with anything, including paranoid schizophrenia, that might cause him to have a mental impairment. Many of investigator von Frese's observations parallel those in Dr. Hasan's report; he states that K.A.H. "has a tendency to become non-compliant with his medications" and "reportedly has a history of aggressive and violent behaviors." (May 16, 2022 Investigator's Report at 2, 4.) Investigator von Frese recommended appointment of a guardian, but he also opined that K.A.H. "would benefit from placement into a professionally supervised setting." *Id.* at 3.

{¶ 4} The probate court magistrate issued a decision approving Clark's application for appointment as guardian of the person of K.A.H. on May 23, 2022. No objections were filed, and the probate court adopted the magistrate's decision as its own. Nevertheless, letters of guardianship were not issued until May 4, 2023, nearly a year later.

{¶ 5} Southeast terminated services to K.A.H. effective July 26, 2023.

{¶ 6} On October 26, 2023, two guardianship complaints were filed with the probate court. The first, filed by Southeast, stated:

> Ward was discharged from care from Southeast, Inc. on July 26, 2023. During the course of the discharge, Southeast, Inc. provided Guardian with 5 different referrals to other health care providers for future medical care for Ward. Each of these 5 identified health care providers offer both out-patient and telehealth psychiatric services and accept Medicare/Medicaid. As of October 24, 2023, to Southeast, Inc.'s good faith belief and knowledge, Guardian has not contacted any of these providers (or any other providers) to transfer Ward's care. Complainant is concerned that Ward may not be receiving necessary medical care because of Guardian's inaction. Specifically, Ward may be out of needed psychiatric medication in a matter of days.

(Oct. 26, 2023 Guardianship Compl. Form by Southeast at 2.) Southeast requested that K.A.H. be linked with another healthcare provider to receive needed psychiatric care.

No. 24AP-193

{¶ 7} The second complaint was filed by Susan L. Villilo, MSW, LISW-S, an employee of the Alcohol, Drug and Mental Health ("ADAMH") Board of Franklin County. It stated:

> 10/25/2023 ADAMH Board of Franklin Co. received a call from Emily Cooner at Franklin Co. Commissioner Boyce's office. I returned the call to Emily on this date. She requested ADAMH assistance for guardian April Clark, with medication for her ward [K.A.H.]. I had previously reviewed this case with Southeast Healthcare related to the appropriateness of [K.A.H.'s] discharge from services, was familiar with the case and the provisions for ongoing treatment for [K.A.H.] offered to Ms. Clark. During the phone call, Ms. Clark stated that [K.A.H.] was days away from being out of medication which would lead to seizures and potentially death, however she dominated the call with lengthy complaints against Southeast. I advised her to use a hospital emergency department if she believed [K.A.H.] was in danger of serious health complications. She responded with additional concerns about Southeast. I informed her Southeast would be willing to write a bridge prescription if [K.A.H.] had a psychiatric appointment scheduled. She stated that she refuses to allow him to receive treatment any place other than Southeast and continued to verbalize multiple complaints about the care and treatment he has received at Southeast. I am concerned for the wellbeing of [K.A.H.] as Ms. Clark is unable or unwilling to allow for the mental health treatment [K.A.H.] needs.

(Oct. 26, 2023 Guardianship Compl. Form by Villilo at 2.) Villilo requested the probate court remove Clark as K.A.H.'s guardian.

{¶ 8} Probate court investigator Eric R. Horvath filed a report on November 8, 2023. Horvath and another investigator visited Clark and K.A.H.'s home on October 30, 2023, during which they spoke to Clark on the porch but did not speak to K.A.H., who remained inside. According to Horvath, Clark stated that K.A.H. "was not feeling well and she did not want to upset him with word of our investigation." (Nov. 8, 2023 Compl. Disposition at 2.) Horvath described Clark as "generally cooperative," but noted that she "immediately dominated the conversation with a barrage of accusations lobbied directly at Southeast." *Id.* Clark acknowledged having received notice from Southeast that it was terminating K.A.H.'s services, but she claimed that Southeast was not allowed to do so. She stated that she had filed complaints about Southeast, including claims that Southeast's termination of services violated K.A.H.'s civil rights, with the United States Department of

Health and Human Services, the United States Department of Justice, and the Ohio Department of Health. Horvath claimed Clark was nonresponsive when asked whether she had contacted any of the mental healthcare agencies that Southeast had provided her to obtain K.A.H. a new provider. She instead claimed that services offered by Southeast "are essential" to K.A.H.'s "mental wellness and that he has the 'right as a human being' to receive the same." *Id.*

{¶ 9} Horvath also recounted conversations he had with Southeast's legal counsel, Lisa Reisz, and with Susan from the ADAMH board. Reisz told him that Southeast had ensured that K.A.H. had medication to last three months after it terminated services but that, almost three months later, no provider had reached out to indicate it was taking over K.A.H.'s care. Reisz reported that Clark had been largely uncooperative and had engaged in harassing and threatening behavior while K.A.H. was linked with Southeast, which made it difficult for Southeast to be an effective provider. According to Horvath, Susan from the ADAMH board stated that K.A.H. "continues to require psychiatry, medication, counseling & case management services" but that Clark "refuses to engage a new service provider for reevaluation, despite the repeated concerns from ADAMH." *Id.* at 3. Susan reported that Clark stated during a phone call, "she would let [K.A.H.] die before she sought services from someone other than" Southeast. *Id.*

{¶ 10} Clark filed a joint answer to the guardianship complaints. Rather than address K.A.H.'s continued lack of a mental healthcare provider and lack of prescribed medication, however, Clark continued her pattern of hurling accusations against Southeast. These include allegations that a Southeast doctor "nearly called in the incorrect medication" for K.A.H., that an unlicensed person "impersonating a nurse" caused K.A.H. to go without his medications, that Southeast employees violated privacy provisions of the Health Insurance Portability and Accountability Act, that Southeast billed K.A.H's insurance for services not rendered, and that Southeast had targeted and discriminated against K.A.H. (Nov. 13, 2023 Answer at 3.) Clark claimed that she had already filed multiple complaints against Southeast and its Chief Operating Officer, alleging violations of standards of care and clinical guidelines, alleging dissemination of protected health information, and billing for services not provided. She stated that Southeast was under investigation for retaliation by the Department of Justice's Civil Rights Division. And she claimed that Southeast and

Villilo filed the guardianship complaints here in retaliation for her complaints against Southeast.

{¶ 11} Clark offered no explanation in her answer for allowing K.A.H. to go without a mental healthcare provider after Southeast terminated services in July 2023. Nor did she respond to Villilo's statement that Clark refused to allow K.A.H. to be treated by anyone other than Southeast, even despite her many complaints about Southeast and its alleged practices. With respect to the concerns stated in the guardianship complaints that K.A.H. would run out of his psychiatric medications, Clark argued only that she lacked authority to demand that K.A.H. take his medications. She explained, "My objective in filing for guardianship was ONLY to ensure if [K.A.H] is admitted to a hospital under psychosis again I can help ensure medical decisions in his best interest are made." (Emphasis in original.) *Id.* She stated, "I am the guardian to merely step in in the event [K.A.H.] . . . cannot make sound decisions on his own. As of now, [K.A.H.] makes his own decisions[.]" *Id.* at 2, 4.

{¶ 12} Clark informed the probate court in her answer that K.A.H. had relocated to Atlanta, Georgia, to stay with other family and would not be available to participate in a hearing on the guardianship complaints.

{¶ 13} Following a hearing on December 13, 2023, at which only Clark appeared, the magistrate issued a decision on January 3, 2024, removing Clark as K.A.H.'s guardian. Based at least in part on Clark's refusal to establish K.A.H. with a new mental healthcare provider, to contact Southeast for a bridge prescription, and to provide the court with an address or contact information for K.A.H. or the relative with whom he was allegedly residing in Georgia, the magistrate concluded that Clark's actions constituted neglect of duty, which jeopardized her son's care and maintenance and warranted her removal as guardian. The magistrate stated that the court would determine whether a successor guardian should be appointed once K.A.H. returned to Ohio.

{¶ 14} Clark filed objections to the magistrate's decisions, in which she complained that the magistrate was retaliating against her, in part, for filing a complaint against the magistrate with the Ohio State Bar Association, that the magistrate was violating rules of professional conduct and legal ethics, and that the magistrate was "bias[ed], racist, prejudice[d], and has no capability of being impartial." (Jan. 8, 2024 Obj. at 20.) Clark also repeated her contentions, as stated in her answer to the guardianship complaints, that

Southeast and Villilo filed the guardianship complaints in retaliation for Clark's complaints against Southeast and the ADAMH board.

{¶ 15} Clark did not file a transcript of the hearing in support of her objections. Although she filed a motion for a copy of the digital recording and a transcript of the hearing, the probate court denied that motion based on Clark's noncompliance with Loc.R. 11, which governs preparation of a transcript.

{¶ 16} On February 29, 2024, the probate court summarily overruled Clark's objections and adopted the magistrate's decision removing Clark as K.A.H.'s guardian. Clark filed a timely notice of appeal.

## II. ANALYSIS

{¶ 17} App.R. 16(A)(3) requires an appellant to include in his brief "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." App.R. 16(A)(7) then requires the appellant to provide "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." An appellate court must determine an appeal based on the assignments of error set forth in the appellant's brief. App.R. 12(A)(1)(b).

{¶ 18} Clark's brief does not clearly state an assignment of error, nor does Clark refer to places in the record that reflect the supposed errors. She does, however, state in the "ARGUMENT" section of her brief that the trial court "erred in its decision by way of Abuse of Discretion" and that she "has been deprived of rights secured by the US Constitution and the laws of the United States." (Appellant's Brief at 18.) From her arguments, we construe Clark's brief as stating a single assignment of error that challenges the trial court's order removing her as K.A.H.'s guardian. *See State v. Lindsay*, 2013-Ohio-3332, ¶ 4-5 (5th Dist.) (extrapolating an assignment of error from appellant's argument); *State v. Obong*, 2011-Ohio-21, ¶ 5 (2d Dist.) (same); *In re Williams*, 78 Ohio App.3d 556, (10th Dist. 1992) (same).

{¶ 19} A probate court has exclusive jurisdiction to appoint and remove guardians. R.C. 2101.24(A)(1)(e); R.C. 2111.02(A). Under Ohio law, a guardian occupies a fiduciary

No. 24AP-193

relationship to a ward. R.C. 2109.01. A guardian of an incompetent person is required to exercise the powers of guardianship in the best interest of the ward. R.C. 2111.50(C)(1).

{¶ 20} The "probate court is the superior guardian of wards who are subject to its jurisdiction." R.C. 2111.50(A)(1). The probate court "may remove any fiduciary, after giving the fiduciary not less than ten days' notice, for . . . neglect of duty, incompetency, or fraudulent conduct, . . . or for any other cause authorized by law." R.C. 2109.24. "[T]he plenary power of the probate court as the superior guardian allows it to investigate whether a guardian should be removed upon receipt of sufficient information that the guardian is not acting in the ward's best interest." *In re Guardianship of Spangler*, 2010-Ohio-2471, ¶ 58.

{¶ 21} We review a probate court's removal of a guardian pursuant to R.C. 2109.24 under an abuse of discretion standard. *In re Guardianship of Schwarzbach*, 2017-Ohio-7299, ¶ 14 (10th Dist.), citing *In re Guardianship of Duffy*, 1989 Ohio App. LEXIS 953 (10th Dist. Mar. 16, 1989); *In re Guardianship of Cohodes*, 2015-Ohio-2532, ¶ 17 (10th Dist.). An abuse of discretion "suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 22} In her acceptance of fiduciary duties as K.A.H.'s guardian, Clark agreed to "protect and control the person of my ward, and make all decisions on behalf of the ward based on the ward's best interest." (Apr. 19, 2022 Guardian – Fiduciary's Acceptance.) She also agreed that, as K.A.H.'s guardian, she would inform the court within 30 days of any change of address or phone number of either herself or K.A.H., and she acknowledged that failure to do so may result in her removal as guardian. (Apr. 19, 2022 Change of Address Information for Guardianship.) Clark repeated those promises in her oath of guardianship, executed May 17, 2022 and filed May 4, 2023.

{¶ 23} The probate court adopted the magistrate's decision, including the magistrate's findings of fact and conclusions of law, as the court's own. The probate court found that Clark was aware of K.A.H.'s serious mental illness and had received direction from Southeast when it terminated services how to get K.A.H. necessary treatment elsewhere. The probate court found that when Southeast discharged K.A.H. from services on July 26, 2023, Southeast provided Clark with referrals to alternative healthcare providers for K.A.H. Three months later, as K.A.H. ran the risk of running out of his

No. 24AP-193

psychiatric medication, Southeast expressed its concerns that Clark had not contacted any of the alternative healthcare providers to facilitate continuance of K.A.H.'s treatment. In her guardianship complaint, Villilo reported Clark's own stated concern that K.A.H. was days away from running out of medication in October 2023. Although Villilo informed Clark that Southeast was willing to write a bridge prescription so long as K.A.H. had an appointment scheduled with a new healthcare provider, the probate court found that Clark did not contact Southeast for a bridge prescription and did not establish K.A.H. with a new provider, thereby putting K.A.H. at risk for severe health consequences. The probate court also found that Clark refused to provide an address or contact information for K.A.H. or the uncle with whom he was allegedly residing in Georgia.

{¶ 24} As noted above, Clark did not file a transcript of the December 13, 2023 hearing in support of her objections to the magistrate's decision, so she may not challenge the trial court's findings of fact on appeal. *See Moore v. Ohio Dept. of Rehab. & Corr.*, 2024-Ohio-6109, ¶ 14 (10th Dist.). Pursuant to Civ.R. 53(D)(3)(b)(iii), "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact . . . shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iv) explains that, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Because Clark did not provide the probate court with a transcript of the December 13, 2023 hearing to support her objections to the magistrate's decision, this court is bound by the magistrate's factual findings, subject to plain error. *Moore* at ¶ 14, citing *Huffer v. Huffer*, 2013-Ohio-1575, ¶ 8 (10th Dist.). Clark presents no argument regarding plain error in the probate court's factual findings.

{¶ 25} The question thus becomes whether the probate court's decision to remove Clark as K.A.H.'s guardian for neglect of her fiduciary duties, was unreasonable, arbitrary, or unconscionable in light of the facts before the probate court. We conclude that it was not. Whether or not Southeast was legally entitled to terminate K.A.H.'s services, it did so and it informed Clark of that fact. Yet while fiercely challenging Southeast's actions, Clark

has left K.A.H. without a replacement mental healthcare provider since July 2023. Clark indicated to Villilo in October 2023 that K.A.H. was days away from running out of his medication, which she admitted could have dire consequences, but that was at least in part because Clark had not facilitated linking K.A.H. with an alternative provider—either one of the providers given to her by Southeast three months earlier or another provider. Even then, Villilo told Clark that Southeast would write K.A.H. a bridge prescription so long as he was scheduled to see a new provider, but Clark rejected that offer. Under these facts, we cannot find that the probate court acted unreasonably, arbitrarily, or unconscionably in removing Clark as K.A.H.'s guardian.

{¶ 26} Clark's arguments in her appellate brief do not address the core issue in this case: did the probate court abuse its discretion by removing Clark as K.A.H.'s guardian. The bulk of Clark's arguments revolve around her belief that she has been the victim of retaliation by Southeast and the ADAMH board for speaking out against allegedly unethical and illegal practices by Southeast and an alleged coverup by the ADAMH board. She argues that the magistrate and the probate court judge are "seemingly in collusion" with Southeast and the ADAMH board "to cover up . . . criminal actions," and she accuses court employees of harassment and corruption. (Appellant's Brief at 26.) Clark's allegations, which are not supported by evidence in the record, however, do not affect our answer to whether the probate court acted reasonably by removing Clark as K.A.H.'s guardian. No matter the reason Southeast terminated K.A.H.'s services and no matter why Southeast and Villilo filed the guardianship complaints, the fact remains that Clark had the ability to link K.A.H. with another healthcare provider to ensure his continued treatment and access to necessary medication, but she did not.

{¶ 27} Clark's arguments in her merit brief that she and K.A.H. have suffered violations of their rights under the First, Sixth, and Fourteenth Amendments to the United States Constitution must likewise fail. Clark's argument under the First Amendment seems to be that she has been retaliated against for reporting and filing complaints of allegedly unethical and illegal business practices by Southeast and of an alleged cover-up by the ADAMH board. Clark has undisputedly made a litany of claims and allegations against Southeast and the ADAMH board, not only here and in the probate court, but also in federal courts and with various federal and state administrative bodies. The probate court,

No. 24AP-193

however, did not remove Clark as K.A.H.'s guardian because of her complaints against Southeast or the ADAMH board; it did so because of her failure to ensure that K.A.H. remained linked with a necessary mental healthcare provider after Southeast discontinued its services. There is simply no evidence in the record of a correlation between Clark's First Amendment activity and the probate court's order removing her as K.A.H.'s guardian. Clark's claim that she was denied her Sixth Amendment right to confrontation because neither Villilo nor a representative of Southeast appeared for the hearing on the guardianship complaints fails because the Confrontation Clause applies only in criminal cases. *See In re L.V.*, 2024-Ohio-5917, ¶ 80 (8th Dist.). Finally, although Clark mentions the rights to due process equal protection under the Fourteenth Amendment, she offers no coherent argument or legal authority for concluding that those rights have been violated here.

## III. CONCLUSION

**{¶ 28}** Having found no abuse of discretion in the probate court's removal of Clark as K.A.H.'s guardian, we overrule Clark's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.

*Judgment affirmed.*

DORRIAN, MENTEL, BOGGS, JJ., concur.